Mead v. Pollock.

## Aaron B. Mead et al. v. Margaret Pollock.

1.  TRESPASS—*To Household Goods—Removal from Rooms.*—A housekeeper in the employ of a family occupying a rented house, by remaining in the house with her goods after the expiration of the lease and the removal of the family, becomes a trespasser, and her goods may be lawfully removed therefrom, provided such removal is effected without actual violence and doing no unnecessary harm to her or to any of her belongings.

2.  PRACTICE—*Evidence Under the General Issue in Trespass.*—Under the general issue the burden of a trespass is upon the plaintiff.

3.  PUNITIVE DAMAGES—*When Not Recoverable in Trespass.*—Where an act complained of as a trespass is not done maliciously, wantonly or willfully, vindictive damages are not to be allowed.

4.  MASTER AND SERVANT—*Where the Occupation of Rented Premises by a Servant is the Occupation of the Master.*—Where the occupation of a rented house by a servant is connected with the service, or is required by the employer for the necessary or better performance of such service, the occupation is as a servant and not as a tenant, and the purpose is that of the master.

5.  SAME—*Right of a Servant When a Trespasser.*—Where the servant of a master occupies leased premises and remains in possession of the premises after the termination of the lease, such tenant becomes a trespasser, but neither she nor her belongings can lawfully be treated with unreasonable violence.

**Trespass,** to household goods.    Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding.    Heard in the Branch Appellate Court at the October term, 1900.    Reversed and remanded.    Opinion filed December 24, 1901.

FRANK W. WHEELER and FRED D. SILBER, attorneys for appellants.

SEWARD S. SHIRER and ALBERT E. DENNIS, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

April 28, 1898, Mead and Coe, two of appellants, as agents, leased to one Rugh the first floor apartment in 6023 Ellis avenue, for one year from May 1, 1898, to be used and occupied solely as a dwelling.

The lease was signed by Mead & Coe and by R. E. Rugh. Mr. Packard's name was not mentioned therein, nor, so far as appears, in connection with the letting, or anything that occurred thereafter. Indeed, the record is barren of anything showing that Mr. Packard had any connection with or anything to do with this case, save the admission that he was, and the mention of his name as owner in one of the pleas filed by defendants in this case and the declaration which proceeds against him as a tort feasor.

The lease contained a provision that the premises should not be underlet nor the lease assigned without the written consent of the lessor. No consent, either written or unwritten, was ever given, nor was the plaintiff ever recognized by Mead & Coe, or Packard, as a tenant. Nor does it appear that Packard had any knowledge that the plaintiff used or occupied or lived in the said premises or any portion thereof, until after all that is complained of in this case had been done. The rent was always paid by the lessee, Rugh.

The clear preponderance of the evidence is, that the plaintiff was employed by a number of persons, students, sometimes in the case spoken of as a club, to act as housekeeper for them, they taking their meals in the premises, she superintending the preparation of the same and receiving as her compensation, board for herself and daughters, and if anything was realized over and above the expense of running this boarding house, a small compensation. According to her testimony all that she received for her entire

services over and above board for herself and daughters was $20.

Some time in August, 1898, an arrangement was made between Rugh, the lessee, and Mead & Coe, that Rugh would surrender his lease and give up possession of said premises at the close of that month, so that Mead & Coe would have the place for another tenant on September 2d. The $20 was one month's rent, namely, for the month of August, and that was allowed to Rugh. The plaintiff knew of and assented to this arrangement and in pursuance thereof rented another flat for her use, beginning on the first day of September.

Each student paid $2.50 a week for his board. Rugh collected this from them, bought provisions and paid the bills, including the rent. It does not appear that either Mead or Coe knew by whom the premises were occupied, although their agent, Hammond, saw the plaintiff a number of times during the tenancy.. There was no evidence tending to show that there had been sub-letting of the premises to the plaintiff or assignment of the lease to her. The written paper itself was handed to her by one Hurlbut about the 1st of August, but there is nothing tending to show that Rugh or the plaintiff, or any one interested in the lease, ever thought that the plaintiff had become liable for the payment of the rent or the performance of any of the conditions of the lease. Her right to occupy and remain in the premises was, under the evidence, like that of a lady employed by a family as housekeeper. The entire arrangement for the surrender of the lease and allowing $20 to the lessee as a consideration therefor was made with Rugh, and without, so far as appears, any thought upon the part of the plaintiff or any other person interested in the lease, that she had any right therein or thereunder, while, as before stated, she was very properly informed as to the contemplated and actual surrender, and in consequence thereof rented other premises.

In the absence of any evidence showing that conversations had by the plaintiff with Rugh, Hurlbut and others

were known to any of the plaintiffs, evidence thereof should not have been admitted. Whatever right to be or remain in the premises the plaintiff had, she derived under and through Rugh.

Upon the 2d of September, at which time the acts complained of took place, the lease having been terminated by agreement, her remaining in the premises was a trespass, and the goods which she had therein, the defendants had a right to remove, if they could do so without actual violence, using no unnecessary force and doing no unnecessary harm to any of her belongings. Keegan v. Kinnare, 123 Ill. 286–288–289; Clinton Wire Cloth Co. v. Gardner, 99 Ill. 151; Ft. Dearborn Lodge v. Klein, 115 Ill. 189; Fabri v. Bryan, 80 Ill. 182; Page v. DePuy, 40 Ill. 506, Ambrose v. Root, 11 Ill. 497; Schaefer v. Silverstein, 46 Ill. App. 610; Mueller v. Kuhn, 46 Ill. App. 496.

Under the plea of the general issue filed by the defendants, the burden of proving a trespass was upon appellee. West Chicago St. Ry. Co. v. Morrison, 160 Ill. 288–295.

The evidence shows that in the removal of her furniture, but little damage was done. The verdict and judgment for $500 must have been based upon an intention to give punitive damages. The plaintiff herself was not put out of the premises, nor was any of the furniture, or her belongings in the room in which she was at the time Hammond and others of the defendants entered the flat and removed the greater portion of her furniture, interfered with in any way. About four o'clock in the afternoon she, of her own accord, went out of the flat, and having previously made arrangements for the carrying away of her furniture, it was at about said time taken away by a person whom she employed, and during the evening placed in the flat she had previously rented.

There was no evidence tending to show that Parker, Mead or Coe, in any way directed any one to put the plaintiff or any of her belongings out of the premises, or that they ratified the act after it had been done.

Upon the morning of September 2d, the lease having

Mead v. Pollock.

been terminated by agreement and it being understood by all parties that the plaintiff would be out of the place by the first of September, calciminers and decorators were sent to the flat to put it in condition for another tenant. They gained access to the house without opposition and proceeded with their work with the assent of the plaintiff, but the plaintiff's furniture so interfered with what they desired to do that Hammond, the agent for Mead & Coe, without consultation with them, or information to them of the situation, decided to put the plaintiff's furniture out, and proceeded so to do. He, and those acting with him, testified that while the plaintiff objected to their doing so and stated that she had meant to have been out before and would go very shortly, she finally told Mr. Hammond that he could do as he thought best. So far as appears, before Parker, Mead or Coe knew anything of what had been done in the way of moving the plaintiff's furniture, she had voluntarily taken out the furniture and her belongings in the room which was not disturbed by Hammond and moved it with herself to another flat. Under such circumstances, punitive damages can not be recovered from either Packard, Mead or Coe. Grund v. Van Vleck, 69 Ill. 478; Rosenkrans v. Barker, 115 Ill. 331; Becker v. Dupree, 75 Ill. 167; Douglas v. Hoffman, 72 Ill. App. 110; The Amiable Nancy, 3d Wheaton, 546.

The instructions of the court not only warranted the jury in giving punitive damages against all of the defendants, but in effect told the jury that if the lessor had knowledge of the arrangement she had with Rugh and others of the club, at whose instance he took the lease, she thereby became an assignee of the lease and entitled to the right of occupancy an assignee would have.

Even had Packard, Mead and Coe known of the arrangement which the plaintiff made with Rugh and thereafter continued to receive rent from Rugh, it would not have made her an assignee of the lease, liable to pay rent or perform any of its covenants, or entitled to any rights or to the premises, save such as she had by her agreement with Rugh to act as housekeeper.

Where the occupation of a house by a servant is connected with the service, or is required by the employer for the necessary or better performance of the service, the occupation is as servant, not as tenant, and the purpose is that of the master. Chatard Bishop v. O'Donovan, 80 Ind. 20; Kerrains v. People, 60 N. Y. 221; Woodfall on Landlord and Tenant, 246.

If Hammond, Spire, and those assisting in the removal of plaintiff's goods did so with unreasonable violence and injury to her belongings they are liable to her for such injury. It is averred they threatened her with arrest and said they had a warrant; she does not seem to have been injured by such threats, if any there were. She does not seem to have claimed to them or any one any right to remain in the premises after September 1st. Nevertheless, as a trespasser, she had rights, and neither she nor her belongings could properly or lawfully be treated with unreasonable violence.

The judgment of the Superior Court is reversed and the cause remanded.