(Nos. 35745-6.— )

. THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
LEONARD D. GODUTO *et al.*, Appellants.

*Opinion filed April 26, 1961.*

SCHULTZ, BIRO & KARMEL, of Chicago, for Appellants.

WILLIAM L. GUILD, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, JAMES J. GLASSER, and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The municipal court of Chicago in separate trials found defendants Leonard D. Goduto and Nathan Friedman guilty of criminal trespass and fined each of them $25 and costs. The two cases have been consolidated for review in this court because the same fairly debatable constitutional ques-

tion was presented to and passed upon by the trial court in each case. *People* v. *Watkins,* 19 Ill.2d 11.

The alleged trespass occurred on property leased by Sears, Roebuck and Company. The property is adjacent to a retail store operated by the company and has been paved for use as a parking lot by employees and customers of the store. On March 11, 1959, the defendants, who are union representatives of Local 1550, Retail Clerks International Association, AFL-CIO, entered upon the parking lot for the sole purpose of distributing union leaflets and questionnaires to employees at the store. Eugene Reuter, operating superintendent of the store, told the defendants who he was, informed them that the company did not permit soliciting on its property without its permission and asked them to leave the premises. They refused and he again asked them to leave. They told him they had a legal right to solicit on the property. He asked them to leave a third time and warned them that he would call the police. They still insisted that they had the right to be on the property. Reuter thereupon called the police and defendants were arrested. They were tried and found guilty of violating section 266 of division I of the Criminal Code (Ill. Rev. Stat. 1957, chap. 38, par. 565,) which provides: "Whoever * * * is unlawfully upon the enclosed or unenclosed land of another and is notified to depart therefrom by the owner, or occupant, or by his agent or servant, and neglects or refuses so to do, * * * shall be guilty of a misdemeanor * * *."

The defendants contend that the trial court had no jurisdiction to convict them of criminal trespass because Congress by the enactment of the National Labor Relations Act, (49 Stat. 449,) and its extensive amendments, (61 Stat. 136, 29 U.S.C.A. 151 *et seq.,*) has divested this State of the power to interfere with the labor activity in which they were involved by means of a trespass prosecution. We accept the defendants' and Attorney General's view that the activities of the store in question affect interstate commerce

within the meaning of the National Labor Relations Act. We also assume, although the point was not raised, that we cannot assert jurisdiction under the provisions of section 14 of the National Labor Relations Act as amended. (29 U.S.C.A. 164.) The arguments of the defendants and the Attorney General are therefore properly focused on the question of whether Federal legislation has divested us of power to deal with the activity here involved by means of a criminal trespass action.

We recognize that when an activity is protected by section 7 or prohibited by section 8 of the National Labor Relations Act, the States must abstain from regulation; (*International Union, UAW* v. *O'Brien,* 339 U.S. 454, 70 S. Ct. 781; *Garner* v. *Teamsters Union,* 346 U.S. 485, 74 S. Ct. 161; *Weber* v. *Anheuser Busch, Inc.,* 348 U.S. 468, 75 S. Ct. 480; *San Diego Building Trades Council* v. *Garmon,* 359 U.S. 236, 79 S. Ct. 773;) and when the activity is arguably subject to section 7 or section 8 of the act, the States must yield to the primary jurisdiction of the National Labor Relations Board for a clear determination of the question. (*San Diego Building Trades Council* v. *Garmon,* 359 U.S. 236; *Weber* v. *Anheuser Busch, Inc.,* 348 U.S. 468; *Guss* v. *Utah Labor Relations Board,* 353 U.S. 1, 77 S. Ct. 598.) Yet State jurisdiction has prevailed where a labor activity involves violence or incitement to violence. (*Youngdahl* v. *Rainfair, Inc.,* 355 U.S. 131, 78 S. Ct. 206; *United Construction Workers, etc.* v. *Laburnum Const. Corp.* 347 U.S. 656, 74 S. Ct. 833.) And although employers' property rights are limited by the need to protect employees' rights under the act and a determination of this need is committed primarily to the National Labor Relations Board, (*National Labor Relations Board* v. *Babcock & Wilcox Co.,* 351 U.S. 105, 76 S. Ct. 679;) the Supreme Court has expressly reserved the question of whether a State may enforce a no-trespass rule where no effort has been made to invoke the jurisdiction of the National Labor Relations Board.

(*Amalgamated Meat Cutters, AFL* v. *Fairlawn Meats, Inc.*, 353 U.S. 20, 77 S. Ct. 604.) With these general principles in mind we proceed with an examination of our right to assert jurisdiction in this case.

Any unauthorized entry on the land of another or unlawfully remaining on the premises of another is a trespass for which the law provides a civil remedy. (*Checkley* v. *Illinois Central Railroad Co.* 257 Ill. 491; *Mead* v. *Pollock*, 99 Ill. App. 151; 52 Am. Jur., Trespass, sec. 11.) Trespass was not a crime at common law, however, unless it was accompanied by or tended to create a breach of the peace. (*Busick* v. *Illinois Central Railroad Co.* 201 Ill. App. 63.) It is apparent therefore that the criminal sanctions of the common law were not imposed primarily for the protection of property rights but were imposed for the protection of public safety. This was a recognition of the fact that trespass can lead to violence. Indeed the owner or occupant of land has the right to use any force necessary to remove a trespasser in situations where there is no time to resort to the law. (See Prosser, Torts 2d ed., sec. 21.) However, the distinction between trespasses for which there was only civil liability and those for which there was also criminal liability was not made clear by the common law. (52 Am. Jur., Trespass, sec. 84.) Our legislature in 1874 made certain acts of trespass punishable as crimes, (Rev. Stat. 1874, p. 348,) thereby removing the uncertainties that existed at common law.

When a person refuses to leave another's property after he has been ordered to do so, a threat of violence becomes imminent. It was for this reason that the legislature made this type of trespass subject to criminal prosecution. The basic purpose of the statute is the prevention of violence or threats of violence. Of course, it also affords protection to property rights which is a proper subject for the imposition of criminal sanctions.

The defendants have made much of the fact that there

was no violence in this case. We believe, however, that this was due to the fact that the company did not resort to self-help to remove defendants from the premises. The defendants were on property occupied by Sears, Roebuck and Company. The company's agent believing the defendants had no right to be on the property ordered them to leave three times. The defendants believing they had a right to be there refused to leave. At this point the company called the police. If the State had not taken charge of the situation, the company would have had no alternative but to forcefully remove the defendants. We cannot know the amount of·force that would have been necessary to remove them, but the threat of violence in such a situation is imminent. See *e.g., Marshall Field & Co. v. National Labor Relations Board,* (7th cir.) 200 F.2d 375.

In addition to the State's interest in preserving domestic peace, the law recognizes the company's right to protect its property interests. The leading case on the right of non-employee union organizers to distribute union literature on company-owned parking lots is *National Labor Relations Board* v. *Babcock & Wilcox Co.* 351 U.S. 105, 76 S. Ct. 679. The court there stated: "\* \* \* an employer may validly post his property against non-employees distribution of union literature if reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its· message and if employer's notice or order does not discriminate against the union by allowing other distribution." In these circumstances the court recognizes the property interest of the employer to be superior to the interest of the union in having a convenient means of communicating with employees. The notice or order of the employer is of little consequence, however, if it cannot be enforced.

As we have indicated, the criminal trespass statute does protect property rights in situations where violence or an imminent threat of violence is present. If the employer can-

not avail himself of this statute, which is general in its application and would be available to him against any other supposed trespasser, he must resort to self-help, for he can obtain no preventive relief under the National Labor Relations Act. The Supreme Court has stated that when legitimate interests of employees and employers collide, protection of the employees' interest under the National Labor Relations Act is not so absolute as to deny self-help by employers. (*National Labor Relations Board* v. *Truck Drivers Local Union No. 449, AFL,* 353 U.S. 87, 77 S. Ct. 643.) Although the employer may use self-help in such a situation such remedy may be wholly inadequate and it presents a threat of violence.

On the other hand, the union organizers who feel that their statutory rights have been invaded by an employer's refusal to permit them to enter on its property may secure relief through the National Labor Relations Board. (See *National Labor Relations Board* v. *Babcock & Wilcox Co.* 351 U.S. 105, 76 S. Ct. 679.) The Board can, in a proper case, order the employer to cease and desist from "preventing, by ejection, threat of arrest, and arrest, non-employee union organizers from soliciting employees for union membership" on certain portions of the company's property. (*Marshall Field & Co.* v. *National Labor Relations Board,* 200 F.2d 375, 376-77.) This has been the procedure generally followed by the unions. See *e.g., National Labor Relations Board* v. *Babcock & Wilcox Co.* (5th cir.) 222 F.2d 316; *National Labor Relations Board* v. *Seamprufe, Inc.* (10th cir.) 222 F.2d 858; *National Labor Relations Board* v. *Ranco, Inc.* (6th cir.) 222 F.2d 543; *National Labor Relations Board* v. *Cranston Print Works Co.* (4th cir.) 258 F.2d 206; *National Labor Relations Board* v. *Great Atlantic & Pacific Tea Co.* (5th cir.) 277 F.2d 759.

We believe that the maintenance of domestic peace and the absence of any preventive relief for the protection of the employer's property rights is of sufficient importance to give

our State courts jurisdiction to enforce the criminal trespass statute under the circumstances of this case.

This brings us to the question of whether the defendants' act of trespass as defined by the statute was justified or excused. We recognize that solicitation by nonemployee union organizers on company property is an activity protected by section 7, and that interference with this activity is prohibited by section 8 of the National Labor Relations Act when it can be shown that there is no reasonable alternative channel of communication with the employees or where a valid no-solicitation rule is being unfairly applied. (*Republic Aviation Corp.* v. *National Labor Relations Board*, 324 U.S. 793, 65 S. Ct. 982; *National Labor Relations Board* v. *Babcock & Wilcox Co.* 351 U.S. 105, 76 S. Ct. 679; *National Labor Relations Board* v. *United Steelworkers of America, CIO*, 357 U.S. 357, 78 S. Ct. 1268.) Under such circumstances the act of trespass is justified by the necessity to preserve the freedom to solicit for union organization.

In the *Babcock & Wilcox Co. case*, however, the court pointed out: "This is not a problem of always open or always closed doors for union organization on company property. Organization rights are granted to workers by the same authority, the National Government, that preserves property rights. Accommodation between the two must be obtained with as little destruction of one as is consistent with the maintenance of the other. The employer may not affirmatively interfere with organization; the union may not always insist that the employer aid organization. * * * The determination of the proper adjustment rests with the Board." (351 U.S. 105, 112, 76 S. Ct. 679, 684.) Thus, the determination of whether there are no other reasonable alternative channels of communication with employees or the no-solicitation rule is being unfairly applied is committed primarily to the National Labor Relations Board, (See *National Labor Relations Board* v. *Truck*

*Drivers Local Union No. 449, AFL,* 353 U.S. 87, 77 S. Ct. 643,) and we have no jurisdiction to determine such questions.

Apparently no effort has been made to invoke the jurisdiction of the National Labor Relations Board in this case. This presents the question of whether our State courts can apply the criminal trespass statute without a prior determination by the Board of whether the no-solicitation rule is valid and whether it is being fairly applied.

There is no indication that a request was ever made of Sears, Roebuck & Company to use the parking lot for distribution of union literature. (Cf. *National Labor Relations Board* v. *United Steelworkers of America, CIO,* 357 U.S. 357, 78 S. Ct. 1268.) Apparently the defendants just appeared on March 11, 1959, and began distributing the leaflets on the parking lot. After they had learned that the company did not want them on the lot and warned them that the police would be called, they still insisted they had a right to be there. At this point they could have left and applied to the National Labor Relations Board for a determination of their right to be on the property. (See: *National Labor Relations Board* v. *Babcock & Wilcox Co.* 351 U.S. 105, 76 S. Ct. 679.) They have made no effort, however, to have the proper forum make a determination of their right to be on the company's property but insist that they might have such a right and that we are therefore without power to interfere with their conduct. The anomaly of the situation is that the Board cannot make such a determination either, unless the union seeks it and apparently they are not going to do so.

We believe that under these circumstances the trial court had the power to find the defendants guilty of violating the criminal trespass statute although it had no jurisdiction to determine whether the trespass was justified under section 7 of the National Labor Relations Act or whether the Company was committing an unfair labor practice under section

8 of the act by enforcing the no-trespass rule. Congress has given union organizers the right to go on company property under certain circumstances and has provided a procedure for determining and enforcing this right. The union has failed to follow the procedure that Congress has provided. We are unwilling to hold that the State courts are divested of jurisdiction, not because Congress has preempted the area, but because of the course the union organizers have followed.

The defendants also contend that the trial court erroneously convicted them of criminal trespass because they were "lawfully" upon the premises occupied by Sears, Roebuck and Company. They argue that there are no other reasonable channels of communicating with the employees at the store in question and therefore the constitutional guarantee of free speech gives them the right to remain on the property after notice to leave.

The defendants candidly point out that this constitutional question has not heretofore been decided by any State supreme court. The apparent reason for the lack of authority on this question is that solicitation by nonemployee union organizers on company property is, under the conditions here alleged, an activity that may be protected by section 7 of the National Labor Relations Act, and interference with this activity may be prohibited by section 8 of the act. The unions, as we have heretofore indicated, have generally pursued the remedy available to them under the act when they believed their statutory right had been invaded. In this case, however, jurisdiction of the proper forum for determining defendants' rights under the National Labor Relations Act has not been invoked and we must therefore determine whether they had a right to be on the property by virtue of the constitutional guarantee of free speech and free press.

Defendants state that the case that is most analogous to this one is *Marsh* v. *Alabama,* 326 U.S. 501, 66 S. Ct. 276.

There a distributor of religious literature was convicted of criminal trespass because she remained on the sidewalk of a company-owned town after she had been warned to leave. The Supreme Court held that the application of the Alabama trespass statute, under the circumstances of that case, violated fredom of press and religion guaranteed by the first and fourteenth amendments.

Despite the fact that certain language in that opinion concerning the right to use private property for speech, press and assembly would appear to support defendants' contention when that language is not read in the light of the facts of the *Marsh case,* we believe that the case "goes no further than to say that the public has the same rights of discussion on the sidewalks of company towns that it has on the sidewalks of municipalities." (*National Labor Relations Board* v. *Stowe Spinning Co.* 336 U.S. 226, 242, 69 S. Ct. 541, 549 (dissenting opinion).) The present case does not involve a company town. It is recognized that freedom to solicit for union organization will, under certain circumstances, require an employer to allow the solicitor to approach employees on his property, (*National Labor Relations Board* v. *Babcock & Wilcox Co.* 351 U.S. 105, 76 S. Ct. 679,) but this freedom of solicitation is the result of a regulatory statute and not a constitutional right. See: *Republic Aviation Corp.* v. *National Labor Relations Board,* 324 U.S. 793, 65 S. Ct. 982, 988.

We hold that freedom of speech and press guaranteed to defendants by the first and fourteenth amendments to the Federal constitution and by section 4 of article II of our constitution did not give them the right to remain on the parking lot after they were ordered to leave.

It is also argued that the People failed to prove that Sears had the right to exclude defendants from the property. It is admitted that Sears is the lessee of the property; that the property is used as a parking lot for customers and employees; and that defendants were not employees or pro-

spective customers but were on the parking lot for the sole purpose of distributing leaflets. We believe that this is a sufficient showing of Sears's right to demand that the defendants leave the premises.

Defendants also argue that unlawful entry is the gist of the crime and that their entry upon the parking lot was lawful. They were not charged with, or convicted of, unlawfully entering upon the land of another but were charged with and found guilty of unlawfully remaining upon the land of another after they had been ordered to move. The statute declares such conduct to be a misdemeanor.

For the foregoing reasons the judgments of the municipal court of Chicago are affirmed.

*Judgments affirmed.*