SALLY MARIE HOOD, Petitioner,

*v.*

WILLIAM B. STAFFORD, Respondent.

378 S. W. 2d 766

(*Jackson,* April Term, 1964.)

Opinion filed May 8, 1964.

ANTHONY J. SABELLA, Memphis, for petitioner.

ROBERT L. TAYLOR, Memphis, for respondent, TAYLOR & TAYLOR, Memphis, of counsel.

MR. JUSTICE HOLMES delivered the opinion of the Court.

For convenience, the parties will be referred to according to their status in the Trial Court. The defendant, Sally Marie Hood, on October 21, 1961 was charged with the violation of Section 751 of the Memphis Municipal Code. She was arrested on a warrant sworn out by Wil-

liam B. Stafford, the prosecutor, who was on that date manager of one of the several Pic-Pac Food Stores operated in Memphis. The defendant was found guilty of violating the ordinance and fined $25.00 in the City Court. She appealed to the Circuit Court, where the judgment of the City Court was reversed and the cause dismissed. The prosecutor, Stafford, appealed to the Court of Appeals, where the judgment of the City Court imposing the $25.00 fine was reinstated. The defendant has filed a petition for writ of certiorari in this Court seeking a review of the opinion and decree of the Court of Appeals. We have granted the writ and have heard oral argument.

The city ordinance defendant is charged with violating is as follows:

"ENTICING PERSONS FROM TRADING; INTERFERENCE WITH BUSINESS—It shall be unlawful for any person to entice or attempt to entice away from any business house anyone trading therein or entering therein, or to enter into any business house, or stand on the street or sidewalk in front of any business house, for the purpose of enticing anyone therefrom."

The question of the validity of this ordinance was before this Court in *Rickerson et al. v. City of Memphis,* decided September 9, 1960 by an unreported opinion in which the Court spoke through Mr. Justice Felts. In that case the bill of exceptions did not show facts which constituted a labor dispute. This Court upheld the validity of the ordinance.

In the present case, from the facts as established in the Circuit Court, it appears that prior to October 14, 1961 there were four Pic-Pac Stores in Memphis. On October 14, 1961, Pic-Pac purchased the physical assets

of the Weingarten Food Center Stores. This transaction included the store located at the northeast corner of Summer Avenue and North Highland Street in the city of Memphis. Prior to October 14, 1961, the property on which this store is located was leased to Weingarten. On that date the lease was assigned to Pic-Pac. This property included a parking area on three sides of the store building. The parking area faces Summer Avenue on the south, Highland Street on the west, and Faxon Avenue on the north. There is no shopping center on this property. Pic-Pac is the lessee of the entire premises including the parking area.

On October 14, 1961, Weingarten sold five stores to Pic-Pac and discharged approximately 200 of its employees, including the defendant. It appears that these discharged employees were given four hours' notice and one week's salary in advance at the time of the discharge. Some of these former employees of Weingarten were subsequently employed by Pic-Pac. Local 1529, Retail Clerks International Association, AFL-CIO, had for some time represented the employees of Weingarten, including the defendant. A new collective bargaining agreement had been entered into between Weingarten and the union approximately one week prior to Weingarten's sale of the stores to Pic-Pac. The union sought to obtain employment by Pic-Pac of all former employees of Weingarten. The union was unsuccessful in this effort and decided to call a strike and set up picket lines at the Pic-Pac Stores, including the one at Summer and Highland.

Prior to the sale of the Weingarten stores, this union had sought to organize the employees of Pic-Pac. As a result of this effort, the National Labor Relations Board

held an election on October 4, 1961 for the purpose of determining whether the employees of Pic-Pac desired the union to represent them as bargaining agent. At this election, 19 out of 90 votes cast were in favor of representation by the union. The election was contested and, as far as the record shows, that matter was still pending before the N.L.R.B., at the time of the trial of this case in the Circuit Court.

It further appears that there are also two other matters which at the time of trial were undisposed of before the N.L.R.B. One pertains to the dismissal on September 16, 1961 by Pic-Pac of two employees, and the other relates to Weingarten and its handling of the sale to Pic-Pac and its discharge of its employees. Unfair labor practice charges were filed by Pic-Pac with the N.L.R.B., with reference to the activity in question in this case. These charges were dismissed by the Board and no complaint was issued.

On October 21, 1961 the strike and picketing planned by the union were in full operation, having been begun on the preceding day. The participants in the picketing were former Weingarten employees who were not hired by Pic-Pac. The defendant was a member of this group. About 40 Pic-Pac employees walked off their jobs. These employees were former Weingarten employees who had been employed by Pic-Pac subsequent to the sale of the Weingarten stores to Pic-Pac.

The defendant and other pickets were on the parking area of the Pic-Pac Store at Highland and Summer. They were wearing placards, distributing circulars, and soliciting prospective customers, seeking to persuade these members of the public not to trade with Pic-Pac.

At times defendant and others walked back and forth in front of the door to the store, which defendant estimated to be 200 to 300 feet from the public sidewalk. At other times defendant was out in the parking area of the parking lot. The prosecutor testified that at times it was necessary for customers to step around the defendant and another picket in order to get in the door to the store. He stated that about one-third of those approaching the door turned away and did not enter the store after being approached by the defendant or another picket. The defendant stated she could not estimate the number of persons who turned around and left the premises as a result of her activities. She was asked to leave the premises before being arrested.

It was in this situation that Stafford, the manager of the store, swore out the warrant against defendant, alleging a violation of the above quoted city ordinance. At the time she was arrested, the defendant had moved from the parking lot to the sidewalk, but she had been carrying on her operations as a picket on the parking lot which was under lease to Pic-Pac.

The case was tried in the Circuit Court without a jury. That Court dismissed the warrant, holding that at the time of her arrest defendant had a right to be where she was to pass out literature and "engage in free communication with prospective customers of Pic-Pac." The Circuit Court held that there was a valid labor dispute in progress at the time of the arrest and that defendant's activities were lawful and protected by the Fourteenth and First Amendments to the United States Constitution.

As stated, the Court of Appeals reversed the Circuit Court's dismissal of the warrant and reinstated the $25.00 fine. That Court, in its opinion, stated:

"Neither the decisions of the Supreme Court of the United States nor the Acts of Congress, have, in our opinion, however, undertaken to authorize, even in labor disputes, trespassing on private property. It seems to us, therefore, that the application of the City Ordinance here involved, when attempted to be enforced in labor disputes, has been considerably reduced but not completely destroyed. It is insisted that the parking lot of the Pic-Pac Stores was a quasi public place, and that appellee had a right to be there. The point is also made that when arrested she was not on the private property of Pic-Pac Stores, but on the sidewalk. The offense had, however, been already committed on private property, and the arrest would have been just as valid if she had been arrested in her own home. As to the contention that the parking lot of the Pic-Pac Stores was a quasi public place, it is our opinion that Pic-Pac had invited all members of the public, who were or might be customers of its store, to use its parking lot in connection with business transactions at the store; but, certainly, it had not invited appellee on to its premises, either expressly or impliedly, for the purpose of preventing members of the public from trading with Pic-Pac. The purpose of the implied invitation to the public for use of that lot was for acquiring customers, not for having them enticed away."

The assignments of error contained in the petition for certiorari are as follows:

"1. (a) The Court of Appeals erred in finding it had jurisdiction of the peaceful picketing and

orderly distribution of leaflets which are protected concerted activities under the Labor Management Relations Act, as amended, as constituting the lawful dissemination of information regarding a labor dispute.

(b) The Court of Appeals erred in applying an ordinance prohibiting enticement of persons from trading to regulate activities protected by the Labor Management Relations Act, as amended.

"2.    The Court of Appeals erred in applying and enforcing an ordinance promulgated to prohibit enticement from trading to apply to and prohibit trespass."

The first question presented by the petition for certiorari is one of jurisdiction—that is, whether or not under the National Labor Relations Act the jurisdiction of the state courts is pre-empted by the federal legislation. The latest decisions of the United States Supreme Court indicate that, if the conduct was arguably within the jurisdiction of the National Labor Relations Board, the state courts are precluded from jurisdiction. *In re Green,* 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198; *Marine Engineers Beneficial Association v. Interlake S. S. Co.,* 370 U.S. 173, 82 S.Ct. 1237, 8 L.Ed.2d 418; *Incres Steamship Co. v. International Maritime Workers Union,* 372 U.S. 24, 27, 83 S.Ct. 611, 9 L.Ed.2d 557.

Probably the most direct authority dealing with the questions presented in the petition for certiorari is *People v. Goduto,* 21 Ill.2d 605, 174 N.E.2d 385 (1961), in which the defendants were convicted in the Chicago

Municipal Court of criminal trespass. The defendants entered the parking area of a Sears, Roebuck store for the purpose of distributing union leaflets and questionnaires to employees of the store. The superintendent asked them to leave the premises several times but defendants refused. He then had them arrested. The question of whether or not federal legislation had divested the state courts of power to deal with the activity involved was presented. The Supreme Court of Illinois affirmed the judgment of the Municipal Court. The United States Supreme Court denied certiorari without comment in 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190. The Illinois Court, in that case, recognized that when an activity is protected by Section 7, or prohibited by Section 8, of the National Labor Relations Act, the state must abstain from regulation and, further, that when the activity is arguably subject to Section 7 or Section 8 of the Act, the states must yield to the primary jurisdiction of the National Labor Relations Board. The Court then stated:

> "The defendants have made much of the fact that there was no violence in this case. We believe, however, that this was due to the fact that the company did not resort to self-help to remove defendants from the premises. The defendants were on property occupied by Sears, Roebuck and Company. The company's agent believing the defendants had no right to be on the property ordered them to leave three times. The defendants believing they had a right to be there refused to leave. At this point the company called the police. If the State had not taken charge of the situation, the company would have had no alternative but to forcefully remove the defendants. We cannot know

the amount of force that would have been necessary to remove them, but the threat of violence in such a situation is imminent. See e. g., *Marshall Field & Co. v. National Labor Relations Board*, 7 Cir., 200 F.2d 375.

"In addition to the State's interest in preserving domestic peace, the law recognizes the company's right to protect its property interests. The leading case on the right of non-employee union organizers to distribute union literature on company-owned parking lots is *National Labor Relations Board v. Babcock & Wilcox Co.*, 351 U.S. 105, 76 S.Ct. 679, 685 [100 L.Ed. 975]. The court there stated: '* * * an employer may validly post his property against non-employees distribution of union literature if reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message and if employer's notice or order does not discriminate against the union by allowing other distribution.' In these circumstances the court recognizes the property interest of the employer to be superior to the interest of the union in having a convenient means of communicating with employees. The notice or order of the employer is of little consequence, however, if it cannot be enforced."

In Goduto, the defendants, who were not employees of Sears, Roebuck, came out on the parking lot for the sole purpose of distributing union leaflets and questionnaires to employees of Sears, Roebuck. In the case before the Court, the defendant, who was not an employee of Pic-Pac, came on the parking lot for the purpose of urging the public not to trade with Pic-Pac. The right to

communicate with employees is a right expressly protected by Section 7 of the National Labor Relations Act.

In *Moreland Corporation v. Retail Store Employees Union, Local No. 444,* (1962), 16 Wis.2d 499, 114 N.W.2d 876, the owner of a shopping center brought an action for an injunction to restrain the defendants from picketing in the shopping center. The complaint alleged a trespass by defendants by picketing in front of a store inside the shopping center. The defendants denied any trespass and alleged that the union's agents were exercising a constitutionally protected right of free speech and that the sidewalk in front of the store on which the alleged trespass took place was public property. After reviewing the authorities, the Wisconsin Supreme Court held that the state court had jurisdiction to grant the relief. The Court, at 878 of 114 N.W.2d, stated:

"However, we are of the opinion that the circuit court does have subject matter jurisdiction and may enter a valid judgment determining the controversy. Even assuming the presence of the necessary federal jurisdictional requirements, the question of whether a state court may enjoin picketing as a trespass, in spite of arguable federal labor law pre-emption in other respects, has been expressly left open by the United States Supreme Court. *Amalgamated Meat Cutters & Butcher Workmen of North America, Local No. 427, AFL v. Fairlawn Meats, Inc.* (1957), 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613. We conclude that the courts of Wisconsin do have subject matter jurisdiction to determine a controversy involving an alleged trespass by agents of a labor union."

The Wisconsin Court cited and quoted with approval from the Goduto case. Shepard's citator does not indicate any action on a petition for certiorari in the Moreland case. As pointed out in both the Goduto and Moreland cases, the United States Supreme Court up to the present time has expressly reserved the question of whether a state may enforce a no trespass rule as applied to parking areas and shopping centers. In *Amalgamated Meat Cutters & Butcher Workmen, etc., v. Fairlawn Meats, Inc.*, (1957), 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613, that Court stated:

> "One final point remains to be considered. At two of respondent's stores, located in suburban shopping centers, the picketing occurred on land owned by or leased to respondent though open to the public for access to the stores. As one of the reasons for finding the picketing unlawful, the Court of Appeals recited this fact, and 'trespassing upon plaintiff's property' is one of the activities specifically enjoined. Whether a State may frame and enforce an injunction aimed narrowly at a trespass of this sort is a question that is not here."

■ The Court of Appeals, in its opinion, recognized that, had the defendant been picketing and urging customers not to trade with Pic-Pac while on the public street or public sidewalk, the ordinance would not be enforceable under the facts of this case. In its opinion, the Court stated:

> "Decisions of the Supreme Court of the United States and the Labor Management Relations Act enacted by Congress have, however, cut down the operating effect of this ordinance so as to make it inapplicable in a

labor dispute where pickets are in such places as they have a lawful right to be.

"* * * In the instant case, it was unlawful for appellee to trespass on the property of Pic-Pac Stores, and appellant, one of its store managers, was within his right when he swore out the warrant charging appellee with violation of Section 751 of the Memphis Municipal Code. The fact that he chose to charge her with violation of that section, rather than with the offense of trespass, as such, is immaterial. Since she was a trespasser, and violating the law, her right to do peaceful picketing in a lawful manner cannot save her from conviction in the instant case."

The decision of the Circuit Court was predicated on *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; *American Federation of Labor v. Swing,* 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855, and the decisions of this Court in *Rowe Transfer & Storage Co. v. International Brotherhood,* 186 Tenn. 265, 209 S.W.2d 35, and *Ira A. Watson Co. v. Wilson,* 187 Tenn. 402, 215 S.W.2d 801. The two decisions of this Court are clearly based upon the holding of the United States Supreme Court in the Swing case. Since Rowe and Watson were decided by this Court the United States Supreme Court has modified its decisions in the Thornhill and Swing cases in *International Brotherhood of Teamsters v. Vogt, Inc.,* (1957), 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347. In the Vogt case, the United States Supreme Court reviewed its earlier decisions and stated:

"This series of cases, then, established a broad field in which a State, in enforcing some public policy, whether of its criminal or its civil law, and whether

announced by its legislature or its courts, could constitutionally enjoin peaceful picketing aimed at preventing effectuation of that policy." 354 U.S. 293, 77 S.Ct. 1171.

"The series of cases following Thornhill and Swing demonstrate that the policy of Wisconsin enforced by the prohibition of this picketing is a valid one. In this case, the circumstances set forth in the opinion of the Wisconsin Supreme Court afford a rational basis for the inference it drew concerning the purpose of the picketing." 354 U.S. 295, 77 S.Ct. 1171.

All peaceful picketing is not protected by the First and Fourteenth Amendments, as was indicated by the earlier decisions. Although it was decided before Vogt, this Court, in *Pruitt v. Lambert,* 201 Tenn. 291, 298 S.W. 2d 795, recognized that the Thornhill and Swing decisions had been clarified by later decisions of the United States Supreme Court, which were reviewed by this Court in that case. As stated in *People v. Goduto,* supra, at page 390 of 174 N.E.2d, "freedom of speech and press guaranteed to defendants by the First and Fourteenth Amendments to the federal constitution * * * did not give them the right to remain on the parking lot after they were ordered to leave."

Under the present state of the law, freedom of speech does not entitle one to come upon the property of another and commit a trespass and, while in the act of thus trespassing, seek to persuade the public not to trade with such other.

The Court of Appeals did not, as claimed by assignment of error number two, hold that the ordinance in question prohibited a trespass. What the Court of

Appeals did hold was that since the defendant was a trespasser the ordinance was valid and enforceable against the defendant in this case because, by committing the trespass, the defendant was employing an unlawful means of exercising her right to picket.

In the light of the foregoing authorities, we conclude that the defendant, who was not and never had been an employee of Pic-Pac, did not have a right to come upon the property of Pic-Pac and attempt to entice away from Pic-Pac those who came to its place of business to trade. As applied to the facts of this case, in our opinion, the ordinance is valid and enforceable in the State Courts. Clearly, the defendant violated this ordinance.

The decree of the Court of Appeals is affirmed at the cost of the defendant.