Lawson Milk Company, Appellant, v. Retail Clerks Union Local 698 et al., Appellees.

(No. 8418—Decided September 14, 1977.)

Mr. *Paul W. Walter*, Mr. *Michael T. McMenamin* and Mr. *David E. Schreiner*, for appellant.
Mr. *William B. Gore*, for appellee.

MAHONEY, P. J. The Lawson Milk Company and the Retail Clerks Union separately appeal from a judgment of the Common Pleas Court finding that the court was preempted by the National Labor Relations Act from enjoining any acts of trespass by the Retail Clerks Union organizers on the premises of the Company's retail stores arising out of a "no-solicitation rule" and, or, actual notice against unauthorized access. The court enjoined those acts of trespass where union organizers failed to leave, after a request to leave by an agent or servant of the company. The company appeals the first part and the union appeals the latter part of the judgment. We reverse in part and affirm in part.

## Facts

The case was submitted on stipulations. These were that the union's organizers were repeatedly entering Lawson's store during December 1976 to solicit union membership among the employee clerks. Lawson's had a "no-solicitation" policy prominently posted in all of its stores. These acts continued after the company delivered a letter on December 29 to the unions, as well as to charitable organizations. That letter also stated that the stores were only open to members of the public whose purpose was to purchase the merchandise offered for sale. The letter further requested that the union "cease and desist."

The parties also stipulated that no threats or violence occurred on any of those occasions.

On January 10, 1977, the union filed an unfair labor practice charge against the company for the application of its "no-solicitation" rule to its employees. This action is still pending and is not involved in this case.

On January 31 the trial court granted a preliminary injunction predicated on the union's repeated trespass violations under R. C. 2911.21 (A)(4). That injunction was made permanent on February 8. In its finding the trial court held that it was pre-empted from enjoining any acts of trespass based upon the "no solicitation" rule or the company's "cease and desist" letter to the union. However, the court found that it had jurisdiction to enjoin a trespass based upon a refusal to leave the premises after a direct

request from a company employee or agent. The court reasoned that a violation under subsection (A)(4) carried a greater potentiality for a breach of the peace than violations of subsection (A)(2) or (A)(3). The pertinent portions of R. C. 2911.21 are:

"(A) No person, without privilege to do so, shall do any of the following:

"(1) * * *

"(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows he is in violation of any such restriction or is reckless in that regard;

"(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;

"(4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either."

## Issue

The company appeals the court's failure to enjoin acts of trespass under subsections (A)(2) and (A)(3). The union appeals the granting of the injunction for acts of trespass under subsection (A)(4). The primary question presented is: Do Ohio courts have jurisdiction to enforce Ohio's trespass laws against non-employee union organizers who are conducting an organizing campaign in the employer company stores, or are the courts pre-empted by virtue of Sections 7 and 8 of the National Labor Relations Act?

The secondary issue is whether such jurisdiction is limited to trespass likely to be violent.

The Labor-Management Relations Act (LMRA), Title 29, U. S. Code, Section 157, provides, in part:

"Rights of employees as to organization, collective bargaining, etc.

"Employees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing; and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, * * *."

Section 158 provides, in part:

"Unfair labor practices

"(a) Unfair labor practices by employer

"It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 * * *."

*Discussion*

(A) *The Garmon Rule and exceptions*

The threshold question in a pre-emption case is: Is the activity involved "arguably protected" or prohibited by Section 7 or 8 under the rule enunciated by the United States Supreme Court in *San Diego Building Trades Council* v. *Garmon* (1959), 359 U. S. 236?

In *Garmon, supra,* the United States Supreme Court acknowledged the inherent difficulties in determining if a particular activity is arguably protected by Section 157 or arguably prohibited by Section 158 of the act. The high court stated that, if it is not clear the activity is governed by the act, it is essential that the initial determination be made by the National Labor Relations Board. Such a determination will assure uniform application of the comprehensive federal scheme. The *Garmon* rule, as stressed by the court, is not without exceptions. The Supreme Court said that state courts are not required to yield primary jurisdiction where the activity regulated is merely a "peripheral" concern to the Labor Management Relations Act or the conduct touches interests "deeply rooted" in local feeling and responsibility. Examples of "peripheral" or "deeply rooted" exceptions to the *Garmon* rule include malicious libel (*Linn* v. *United Plant Guard Workers* (1966), 383 U. S. 53), damages for union member's lost wages and mental suf-

fering (*International Association of Machinists* v. *Gonzales* (1958), 356 U. S. 617), and mass picketing (*Automobile Workers* v. *Russell* (1958), 356 U. S. 634).

Sections 7 and 8 of the act demand that an accomodation be reached between the protection of the employer's private property rights and the union's right to solicit membership. If the non-employee union organizer finds that usual channels of communication with employees are ineffective, the employer's property rights must yield. *N. L. R. B.* v. *Babcock & Wilcox, Co.* (1956), 351 U. S. 105. There is no evidence in our case that the union was without reasonable alternate means of communication with the company's employees.

(B) *Violence*

The union contends, in light of the stipulation to the absence of violence, that the trial court's rationale that a violation of R. C. 2911.21(A)(4) carried a greater potentiality for a breach of the peace cannot be maintained. However, simply because no violence erupted does not mean that the potential was absent or that the lack was not due to the company's restraint against using self-help. Every act of trespass has the potentiality of violence if the trespass is a breach of the peace. We are a statutory criminal law state and every violation of a trespass statute is a breach of the peace. We, therefore, conclude that we are dealing with situations here where violence is likely to occur.

(C)*"Peripheral"* or *"deeply rooted"*

We doubt if any one would contend that the activity of union organizing campaigns are "peripheral" to the National Labor Relations Act. Obviously, such activities are arguably protected by Section 7. Likewise, can anyone seriously argue that violence or threats of violence are not matters which touch interests "deeply rooted" in local feeling and responsibility? We believe that the list of exceptions set forth in *Garmon, supra,* is merely illustrative and is not exhaustive. The most recent exception is in *Farmer* v. *United Brotherhood of Carpenters Local 25* (1977), 430 U. S. 290. The court held that a state court was not pre-empted in a tort action by a union member

against the union for damages allegedly caused by intentional infliction of emotional distress.

Our question, therefore, is whether the protection of private property rights necessitated by a posted "no solicitation" policy is so "deeply rooted" in local feeling and responsibility as to preclude pre-emption?

(D) *No Solicitation Rule*

"No solicitation" rules have been defended by employers on the ground of necessity to the efficient operation of business. Employer rules, prohibiting organizational solicitation during working hours, are presumed valid by the National Labor Relations Board in absence of evidence that the rule was adopted for a discriminatory purpose. See, 48 American Jurisprudence 2d 403, 406, Labor and Labor Relations, Sections 577, 580. An employer may lawfully prohibit solicitation of union membership during working hours since "working time is for work." See *Peyton Packing Co.* v. *National Labor Relations Board* (C. A. 5, 1944), 142 F. 2d 1009, *certiorari denied*, 323 U. S. 730. There is a presumption of invalidity, however, where the no solicitation policy regulates union conduct during non-working hours. See 48 American Jurisprudence 2d 404, Labor and Labor Relations, Section 578.

The courts often distinguish between employee and non-employee union membership solicitation. When the employee is the union organizer, the employer may be required to furnish a forum for communication. The non-employee who solicits union membership on company property is more likely to be deemed a trespasser. See *National Labor Relations Board* v. *SeamPrufe, Inc.* (C. A. 10, 1955), 222 F. 2d 858.

The United States Supreme Court recognizes the right of an employer to post his property against soliciting as long as the policy is equally applied. See *Central Hardware Co.* v. *N. L. R. B.* (1972), 407 U. S. 539. On the other hand, the court will not sanction solicitation bans when the union has no available alternative means of communication. See *Republic Aviation Corp.* v. *N. L. R. B.* (1945), 324 U. S. 793.

The distinguishing feature about the foregoing cases

is that, prior to court recognition or enforcement of the no solicitation rule, the National Labor Relations Board had not determined whether the ban constituted an unfair labor practice. The question to be pondered at this point is: *Will a union's refusal to seek a National Labor Relations Board determination on the validity of a solicitation ban as it applies to non-employees, forever preclude state courts from assuming jurisdiction in trespass actions?*

The Supreme Courts of Alabama, New York, Pennsylvania, Wisconsin and Tennessee have ruled that a state court's power to enforce state trespass against union organizers is not pre-empted by the provisions of the Act. See, *Taggart* v. *Weinacker's Inc.* (1970), 238 Ala. 171, 214 So. 2d 913, *certiorari dismissed*, 397 U. S. 223; *People* v. *Bush* (1976), 37 N. Y. 2d 529, 92 L. R. R. M. 3268; *Logan Valley Plaza Inc.* v. *Food Employees Union, Local 590* (1967), 425 Pa. 382, 227 A. 2d 874, reversed on other grounds, 391 U. S. 308; *Hood* v. *Stafford* (1964), 213 Tenn. 684, 378 S. W. 2d 766; *Moreland Corp.* v. *Retail Store Employees Local 444* (1962), 16 Wis. 2d 499, 114 N. W. 2d 876; *State* v. *McDermott* (1965), 3 Conn. Cir. 524, 220 A. 2d 38.

However, the Supreme Courts of Washington and California have reached contrary results. *Freeman* v. *Retail Clerks Union, Local 1207* (1961), 58 Wash. 2d, 363 P. 2d 803; *c. f.*, *Musicians Union, Local No. 6* v. *Superior Court* (1968), 69 Cal. 2d 695, 447 P. 2d 313; *Sears, Roebuck & Co.* v. *Carpenters Local* (1976), 17 Cal. 3d 893, 553 P. 2d 603, *certiorari granted*, 428 U. S. 77.

However, no state court has gone as far as the Illinois Supreme Court in *People* v. *Goduto* (1961), 21 Ill. 2d 605, 174 N. E. 2d 385, *certiorari denied*, 368 U. S. 927. We concur in the reasoning that court applied to resolve the issue. *Goduto, supra*, involved a similar fact situation where non-employee union organizers solicited union membership on company property without seeking a prior determination by the National Labor Relations Board that the no solicitation policy was valid. Subsequently, the non-employee union organizers were convicted of criminal trespass under Illinois law.

The reasoning of the Illinois Supreme Court's assumption of jurisdiction was:

"Congress has given union organizers the right to go on company property under certain circumstances and has provided a procedure for determining and enforcing this right. The union has failed to follow the procedure that Congress has provided. We are unwilling to hold that the State courts are divested of jurisdiction, not because Congress has pre-empted the area, but because of the course the union organizers have followed." (Page 614, 174 N. E. 2d at 389)

The Court said further:

"We believe that the maintenance of domestic peace and the absence of any preventive relief for the protection of the employer's property rights is of sufficient importance to give our State courts jurisdiction to enforce the criminal trespass statute under the circumstances of this case.'" (Page 611, 174 N. E. 2d at 388)

In *Goduto, supra,* as well as in our case, the issuance of the injunction has a threefold advantage. *First,* it gives the company a remedy which they do not otherwise have. *Second,* it leaves the union free under Section 10(J) of the N. L. R. A. to petition the National Labor Relations Board to request the Federal District Court to restrain enforcement of the state injunction if it has been wrongfully obtained. *Capital Service Inc., v. N. L. R. B.* (1954), 347 U .S. 501. *Third,* the union may seek relief through the Board in a proper case, for a "cease and desist" order against the employer from preventing them from entering upon the company property.

*Summary*

We hold that Ohio courts are not preempted by the National Labor Relations Act from the enforcement of Ohio trespass laws against non-employee union organizers who are engaging in organizing campaigns upon company property. We further hold that the protection of private property rights is an overriding state interest which is deeply rooted in local feeling and responsibility.

We further find that acts of trespass arising out of

a failure to leave after a proper request (R. C. 2911.21(A) (4)), or an unauthorized entrance in violation of a properly posted "no solicitation and restricted use rule" (R. C. 2911.21(A)(2) or (A)(3)), are all breaches of the peace. All such breaches of the peace have the inherent potentiality of violence.

We believe that there is little risk that the issuance of an injunction against such trespasses by a state court would, in any way, interfere with the administration of national labor policy until such time as the National Labor Relations Board actually determines that the "no solicitation" rule was invalid as an unfair labor practice.

Accordingly, we conclude that this case falls within the exceptions set forth in the *Garmon* rule, namely the deeply rooted state interest in preventing acts of criminal trespass and in protecting private property rights.

We affirm the judgment of the trial court as it applies to acts of trespass under R. C. 2911.21(A)(4). We reverse the judgment as it applies to acts of trespass under R. C. 2911.21(A)(2) or (A)(3). We remand this matter to the trial court for the issuance of injunctive relief to the plaintiff company in accordance with this decision and journal entry.

*Judgment reversed in part and affirmed in part.*

BELL and VICTOR, JJ., concur.