TAGGART ET AL. *v.* WEINACKER'S, INC.

No. 74. Argued January 12, 1970—
Decided March 9, 1970

*Bernard Dunau* argued the cause for petitioners. With him on the briefs were *Carl L. Taylor, Otto E. Simon,* and *James C. Wood.*

*Shayle P. Fox* argued the cause for respondent. With him on the brief were *Lawrence M. Cohen* and *Alan Raywid.*

Briefs of *amici curiae* urging reversal were filed by *Solicitor General Griswold, Arnold Ordman, Dominick L. Manoli, Norton J. Come,* and *Linda Sher* for the National Labor Relations Board, and by *J. Albert Woll, Laurence Gold,* and *Thomas E. Harris* for the American Federation of Labor and Congress of Industrial Organizations.

*Brice I. Bishop* and *Phil B. Hammond* filed a brief for the American Retail Foundation as *amicus curiae* urging affirmance.

*Allen B. Gresham* filed a brief for the Homart Development Co. as *amicus curiae*.

PER CURIAM.

The complaint in this case was filed January 21, 1965, and the state court issued a temporary injunction on January 22, 1965. After hearing, the state court on April 1, 1965, denied petitioners' motion to dissolve the temporary injunction and continued it in effect. On April 9, 1965, an appeal was taken to the Supreme Court of Alabama. Over three years later, on September 19, 1968, that court entered a judgment of affirmance. The petition for certiorari was filed here on March 28, 1969, and granted on October 13, 1969. 396 U. S. 813.

At the time the appeal was taken to the Supreme Court of Alabama, respondent operated a retail grocery and drug business on the premises that petitioners picketed. Late in 1966, while the appeal was pending in the Supreme Court of Alabama, respondent ceased to operate the grocery and drug business, leasing part of the space to Delchamps, Inc., for a retail grocery store, and part to Walgreen's, Inc., for a retail drug store. Respondent continues to own the land and the building at the site and maintains an office in the building. The injunction enjoins petitioners from "trespassing upon the property of the complainant and from further interfering with the complainant's property and right of ingress and egress to the complainant's property and place of business, until the further orders of this Court."

While the changed circumstances do not necessarily make the controversy moot, they are such that, if known at the time the petition for a writ of certiorari was acted

upon, we would not have granted it. For such small embers of controversy that may remain do not present the threat of grave state-federal conflict that we need sit to resolve.

In this connection one other circumstance should be noted. The Alabama Supreme Court found that this picketing "obstructed customers using the entrances to the store." Petitioners complain (a) that no evidentiary hearing to resolve that factual question was ever held; (b) that it rests solely on conclusory affidavits; (c) that that is a fundamentally infirm procedure for handling facts in the area of the First Amendment; and (d) that if there were obstruction the remedy is enjoining the obstruction, not picketing generally. Yet this phase of the case is overshadowed by the special facts of the case as they were finally clarified on oral argument. The picketing started on the public sidewalks around respondent's premises which are removed from respondent's store by a parking lot; but it soon was transferred to a sidewalk owned and maintained by respondent, a sidewalk from 4 feet to 5.5 feet wide and adjacent to the door of the store where the picketing took place. Even if under *Food Employees* v. *Logan Valley Plaza*, 391 U. S. 308, the union had a First Amendment right to picket on the property involved in this case, a matter that we need not decide, in final analysis we would come down to whether, in light of the physical circumstances of this narrow sidewalk at the store entrance, the following ruling in *Logan Valley*, 391 U. S., at 320–321, is applicable:

> "[T]he exercise of First Amendment rights may be regulated where such exercise will unduly interfere with the normal use of the public property by other members of the public with an equal right of access to it."

While the finding of obstruction was based on affidavits filed by respondent, petitioners, though they had the right under Alabama procedure to do so, Ala. Code, Tit. 7, § 1055 (1958), filed no counter-affidavits prior to issuance of the temporary injunction.[1]   Nor did they, as was their right under Tit. 7, § 1061, of the Alabama Code, submit any such affidavits on the hearing to dissolve the injunction.[2]   They did, however, deny in their motion to dissolve that they were "obstructing customers from leaving or entering" respondent's place of business.   But the only evidence before the Alabama courts on the issue of obstruction was in respondent's affidavits.   That issue was critical, in light of the physical circumstances concerning the narrow sidewalk in front of the door where the picketing took place.   Petitioners, however, chose to rest on jurisdictional grounds.

In light of the obscure record, the physical circumstances of this narrow sidewalk, and the finding of the Alabama courts on obstruction of customers, coupled with the fact that only a bare remnant of the original controversy remains, we conclude that the writ should be dismissed as improvidently granted.

MR. JUSTICE BLACK and MR. JUSTICE HARLAN would hold under San Diego Building Trades Council v. Garmon,

---

[1] Section 1055 provides:

"Upon the hearing of the application for injunction, the sworn answer of the defendant may be considered as well as the bill, and both sides may introduce affidavits of themselves or other witnesses; and upon consideration, the judge must determine whether the injunction be granted or refused."

[2] Section 1061 provides:

"Upon the hearing of motion to dissolve an injunction, the court may consider the sworn bill and answer, whether the answer contains denials of the allegations of the bill or independent defensive matter, and also such affidavits as any party may introduce."

359 U. S. 236, that the State's jurisdiction in the case is pre-empted by the National Labor Relations Board's primary jurisdiction over labor disputes.

[For separate memorandum of MR. JUSTICE HARLAN, see *post*, p. 229.]

MR. CHIEF JUSTICE BURGER, concurring.

I am in accord with the Court's action in dismissing this petition as having been improvidently granted. As the opinion of the Court indicates, "the obscure record" and "the fact that only a bare remnant of the original controversy remains" cast serious doubt on whether we have enough before us to pass on the claim of the union that it had a First Amendment right to picket on the private premises of the employer.

The obscure record and the atrophied controversy now remaining have little if any impact—I think none—on the issue of whether the State's jurisdiction over this matter is "pre-empted" by the National Labor Relations Board's primary jurisdiction over labor disputes. In my view any contention that the States are pre-empted in these circumstances is without merit. The protection of private property, whether a home, factory, or store, through trespass laws is historically a concern of state law. Congress has never undertaken to alter this allocation of power, and has provided no remedy to an employer within the National Labor Relations Act (NLRA) to prevent an illegal trespass on his premises.*

---

*See *People* v. *Goduto*, 21 Ill. 2d 605, 608–609, 174 N. E. 2d 385, 387, cert. denied, 368 U. S. 927 (1961); *Hood* v. *Stafford*, 213 Tenn. 684, 694–695, 378 S. W. 2d 766, 771 (1964); *Moreland Corp.* v. *Retail Store Employees, Local 444*, 16 Wis. 2d 499, 503, 114 N. W. 2d 876, 878 (1962); Broomfield, Preemptive Federal Jurisdiction Over Concerted Trespassory Union Activity, 83 Harv. L. Rev. 552, 555, 562–568 (1970).

Rather, it has acted against the backdrop of the general application of state trespass laws to provide certain protections to employees through § 7 of the NLRA, 61 Stat. 140, 29 U. S. C. § 157. A holding that the States were precluded from acting would remove the backdrop of state law that provided the basis of congressional action but would leave intact the narrower restraint present in federal law through § 7 and would thereby artificially *create* a no-law area.

Nothing in *San Diego Building Trades Council* v. *Garmon*, 359 U. S. 236 (1959), would warrant this Court to declare state-law trespass remedies to be ineffective and thus to remit a person to his own self-help resources if he desires redress for illegal trespassory picketing. *Garmon* left to the States the power to regulate any matter of "peripheral concern" to the NLRA or that conduct that touches interests "deeply rooted in local feeling and responsibility." (359 U. S., at 243, 244.) Few concepts are more "deeply rooted" than the power of a State to protect the rights of its citizens. *Linn* v. *United Plant Guard Workers, Local 114,* 383 U. S. 53 (1966), applied the *Garmon* exceptions to allow state jurisdiction over malicious libel in union organizational literature, recognizing that if the States were precluded from acting, there would be an absence of any legal remedy. The Court there observed that:

> "The fact that the Board has no authority to grant effective relief aggravates the State's concern since the refusal to redress an otherwise actionable wrong creates disrespect for the law and encourages the victim to take matters into his own hands." 383 U. S., at 64 n. 6.

A holding that Congress pre-empted this entire area is as inappropriate here as it was in *Linn,* and for precisely the

same reasons. Cf. *International Longshoremen's Local 1416* v. *Ariadne Shipping Co., ante,* p. 201 (WHITE, J., concurring).

Separate memorandum of MR. JUSTICE HARLAN.

I am prompted by the concurring opinion of THE CHIEF JUSTICE in this case, and by the concurring opinion of MR. JUSTICE WHITE (joined by THE CHIEF JUSTICE and MR. JUSTICE STEWART) in *International Longshoremen's Local 1416* v. *Ariadne Shipping Co., ante,* p. 201, decided today, to amplify, with the following observations, my vote to grant certiorari and reverse the state judgment in the present case.

I would have thought this an easy case after *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236 (1959), wherein the Court concluded, in the broadest terms, that conduct that is either "arguably protected" or "arguably prohibited" under the federal labor laws is not subject to regulation by the States. In such cases the Court held that federal law and federal remedies apply to the exclusion of any state rules, and that whether federal law does apply is to be decided in the first instance by the National Labor Relations Board in accordance with the policy of "primary jurisdiction" established by the National Labor Relations Act. It was concluded that the Board's jurisdiction was pre-emptive notwithstanding the fact that access to the Board was barred by its refusal to exercise jurisdiction because of failure to meet the dollar-amount requirements.

The picketing in the case before us occurred, as found by the Alabama trial court, in the context of a labor dispute, and ultimately took place on private sidewalks maintained by respondent in front of entrances to its building. The trial court also found that there was no violence or threat of violence. Thus, notwithstanding

my differences with the *Garmon* majority, see my concurring opinion, 359 U. S., at 249, as to whether States are pre-empted from regulating arguably "unprotected" activities, *id.*, at 253, I would reverse the decision below since the picketing in this case falls well within the range of what could be considered to be protected under the Act.

While I recognize THE CHIEF JUSTICE's and MR. JUSTICE WHITE's concern over the hiatus created when the Board does not or cannot assert its jurisdiction, see the concurring opinion of THE CHIEF JUSTICE, *ante,* p. 227, and the concurring opinion of MR. JUSTICE WHITE in *International Longshoremen's Local 1416* v. *Ariadne Shipping Co., ante,* p. 201; see also Broomfield, Preemptive Federal Jurisdiction Over Concerted Trespassory Union Activity, 83 Harv. L. Rev. 552 (1970), that consideration is foreclosed, correctly in my view, by *Garmon.* Congress in the National Labor Relations Act erected a comprehensive regulatory structure and made the Board its chief superintendent in order to assure uniformity of application by an experienced agency. Where conduct is "arguably protected," diversity of decisions by state courts would subvert the uniformity Congress envisioned for the federal regulatory program. In the absence of any further expression from Congress I would stand by *Garmon* and foreclose state action with respect to "arguably protected activities," until the Board has acted, even if wrongs may occasionally go partially or wholly unredressed.

Nothing in *Linn* v. *United Plant Guard Workers, Local 114,* 383 U. S. 53 (1966), is to the contrary. The allusion there to the exacerbating effect of the vacuum created by the Board's inability to "redress" an "otherwise actionable wrong" was made in the context of an implicit holding that "malicious libel," even though pub-

lished during a labor campaign, was not "arguably protected" by the Act and the determination that it was a "merely peripheral concern of the Labor Management Relations Act." 383 U. S., at 61. *Linn* is far removed from the present case. Cf. *International Association of Machinists* v. *Gonzales,* 356 U. S. 617 (1958).