SPECTOR, Judge.
By petition for writ of certiorari, Roy Duane Carlson, Jr., seeks review of a judgment of the Circuit Court for Leon County, Florida, affirming his conviction in the Municipal Court of the City of Tallahassee on charges of “disturbing the peace” in violation of a city ordinance. No attack was made below or here on the validity of the ordinance.
The judgment of the circuit court recites that the following two questions were presented in petitioner’s appeal to that court from the municipal conviction, viz: “(1) the sufficiency of the evidence to justify a conviction when the facts are viewed in the light of the constitutional rights of the defendant under the first amendment of the Federal Constitution, and (2) the alleged excessiveness of the punishment imposed.” The latter ground relating to the punishment, although decided adversely to petitioner below, is not raised in this certio-rari proceeding.
The incident which resulted in the charges against petitioner occurred at mu *867 nicipally-owned Capital Stadium in Tallahassee. The stadium had been rented to the supporters of a presidental candidate, George Wallace, for the purpose of holding a political rally in support of his candidacy. The same stadium is rented from time to time to various private organizations, including political organizations.
On the day in question, city police were assigned to duty at the stadium on the combined orders of the Chief of Police and a' United States Secret Service man assigned to Mr. Wallace by the federal government for security purposes. The police were instructed to bar persons carrying signs which would tend to “create trouble” from entrance into the stadium. An area outside and adjacent to the stadium was made available for the use of persons who wished to rally or demonstrate in opposition to Mr. Wallace’s presidential aspirations. The record indicates that the said area was in fact used by numerous persons to express their lack of support for Wallace. Mr. Carlson, petitioner herein, apparently was not willing to voice his opinions in the adjacent area set aside for that purpose. Instead, petitioner entered the gate to the stadium proper, and, once inside, unrolled a sign he had been carrying which bore the legend, “Racism is Destroying My Country”. Petitioner was ushered out twice by the police upon being advised that he could stay but that the sign could not be displayed by him. Ultimately he attempted to force his way inside past the gate guards with the sign. Although he was not violent, he apparently did exert some force. At this time, petitioner was arrested and charged with disturbing the peace.
Petitioner contended below, as he does here, that he had a constitutional right to display his sign of protest and to enter the stadium for that purpose. The circuit court rejected this argument and we agree. In its judgment, the circuit court stated in part:
“The stadium had been leased, although temporarily, to persons desiring to use it for a particular purpose. The appellant is not shown to have had permission from those who had leased the stadium to display his sign in this stadium. On the contrary, the evidence indicates that the display of the sign in the stadium would definitely be contrary to the purposes for which the stadium was rented.”
For reversal, petitioner relies on the proposition that the First Amendment of the United States Constitution assures him the right to carry a poster indicating his political views anywhere he wishes — even if such views may tend to antagonize the majority of persons around him. There is, of course, much to this contention. But there are some factors in his contention that render the thesis vulnerable. While the decisions properly construe first amendment speech rights in the broadest sense, we do not understand it to be the holding of any authoritative tribunal that a person may speak his mind anywhere or under any conditions. This contention was forcefully rejected by the United States Supreme Court in Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149, in which the court held that the belief that people who wish to propagandize protests or views have a constitutional right to do so whenever, however, and wherever they please is fallacious. That concept of constitutional law was vigorously and forthrightly rejected in two of the cases relied on by the appellants in Adderley, supra. The same cases, Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471, and Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487, are relied on by petitioners here.
The incident giving rise to the charges against the petitioner herein resulted from petitioner’s effort to interfere with a political rally or meeting organized to promote the candidacy for public office of a citizen of this country. To this end the candidate’s supporters rented a facility from the City of Tallahassee and, having thus had the facility set aside for their úse, they were entitled to use it free from dis *868 ruption by those who held views of their own. It matters not whether the views of a person who intrudes and disrupts a political meeting in a facility which has been lawfully set aside for use by a group of political partisans are commendable; nor does it matter that the uninvited views of the intruder support or oppose the candidacy of the person in question. The overriding consideration is the fact that Mr. Wallace is entitled to freedom of speech under the First Amendment every bit as much as the petitioner is. Mr. Wallace reserved the stadium so as to exercise that right. The petitioner did not. Instead, the latter sought to interfere with the orderly processes whereunder the stadium was allocated to all and sundry for their respective purposes. Nowhere in the record before us is there any indication that petitioner was refused the itse of the stadium for his purposes at some other time which would not interfere with another’s right to the same freedom of speech for which petitioner clamors so loudly.
Petitioner’s contention that he can speak while another citizen already has the floor can only serve to diminish the right of both to the unfettered exercise of constitutional freedoms.
The notion that freedom of speech is absolute and not subject to reasonable regulation by the state has often been rejected. Even laymen are well familiar with Mr. Justice Holmes’ admonition that “The most stringent protection of free speech would not protect a man falsely shouting fire in a theatre and causing panic”. Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470, 473. Only recently, the highest court in the land reiterated an earlier decision, Fox v. Washington, 236 U.S. 273, 35 S.Ct. 383, 59 L.Ed. 573, holding that the state may punish a person for encouraging the commission of a crime. Cox v. Louisiana, supra. In the Fox case, the court had before it an assault on a State of Washington statute on the grounds that the statute violated the defendant’s first amendment free speech rights. The said statute was as follows:
“Every person who shall wilfully print, publish, edit, issue, or knowingly circulate, sell, distribute or display any book, paper, document, or written or printed matter, in any form, advocating, encouraging or inciting, or having a tendency to encourage or incite the commission of any crime, breach of the peace, or act of violence, or which shall tend to encourage or advocate disrespect for law or for any court or courts of justice, shall be guilty of a gross misdemeanor; * * ” Rem. & Bal.Code, § 2564.
Thus the Supreme Court has held that not even the First Amendment may be construed so broadly as to' permit a person to encourage any person to commit a crime under the claim of freedom of speech. Although the Florida Legislature has not enacted a law of this kind, we refer to the Fox case and the statute there involved to show that only recently the Supreme Court has approved reasonable regulation of speech, the First Amendment notwithstanding. Similarly approved by the Supreme Court only recently in Cox v. Louisiana, supra, is a New Hampshire statute prohibiting any person from addressing any offensive, derisive or annoying words to any other person lawfully on any street or public place or calling him by any offensive or derisive name. Chaplinsky v. State of New Hampshire, 315 U.S. 568, 86 L.Ed. 1031, 62 S.Ct. 766. In that case, the court held the statute valid against first amendment assaults and upheld the conviction of a person charged with calling a city policeman “a goddamned racketeer” and “a damned facist”. In Cox, supra, the court classified such abusive language as “fighting words” and held the utterance of them to be punishable.
In the case at bar, of course, the charges were predicated on the defendant’s insistence that he be permitted to display his placard with its message at a time and place lawfully reserved by others for the *869 purpose of exercising their first amendment rights. Had petitioner displayed his placard in the place provided adjacent to the stadium, he could not have been lawfully arrested merely because of the words written on his placard. The First Amendment protects his right to convey his thoughts and beliefs in any public place. But, he must exercise that right so as not to infringe upon the exercise by another of the same right. Stated differently, one’s first amendment rights end where the same rights of another begin.
We have examined the cases advanced by petitioner in support of his contention and find that they support the judgment of the court below. For example, in Taggart v. Weinacker’s, Inc., 397 U.S. 223, 90 S.Ct. 876, 25 L.Ed.2d 240 (1970), the United States Supreme Court recognized that freedom of speech is a relative right and not absolute, as petitioner contends. There the court stated, at page 242, 90 S.Ct. at page 877:
“The exercise of First Amendment rights may be regulated where such exercise would unduly interfere with the normal use of public property by other members of the public with an equal right of access to it.”
Petitioner’s reliance upon Bachellar v. Maryland, 397 U.S. 564, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970), is unavailing. The incident giving rise to Bachellar’s arrest did not involve an attempted trespass upon public property which had been reserved for a private meeting. On the contrary, it occurred on an open sidewalk in front of a United States Army Recruiting Station in downtown Baltimore. There the court recognized that the convictions of the demonstrators could, constitutionally have rested on a finding that they sat or lay across a public sidewalk with the intent of fully blocking passage along it or that the conviction could constitutionally have rested on a finding that the demonstrators refused to obey police commands to stop obstructing the sidewalk and refused to move on. The court reversed however, not be-. cause the demonstrators were entitled to engage in the foregoing conduct, but because the jury might have convicted under the instructions given to the jury simply because the views of the demonstrators were offensive to some of the hearers.
The commendable views sought to be expressed by petitioner’s placard are the subject of legitimate expression in this land which dearly honors the right of every man to speak his mind. But, this is a right reserved to every man — not to petitioner alone. Under the circumstances reflected in this record, we hold that petitioner unlawfully attempted to interfere with the exercise of first amendment rights by the persons who reserved the stadium for their meeting, thus was guilty of disturbing the peace as charged when he forceably attempted to enter the stadium. Such conduct is also expressly made violative of a state statute, Section 871.01, Florida Statutes, F.S.A., which prohibits the wilful interruption or disturbing of any assembly of people met for any lawful purpose in this state. The rule respecting the interpretation of said statute is found in 4A Fla.Jur., Breach of Peace, etc., § 8, Disturbing Meetings, as follows:
“An offense which falls within the general concepts of a breach of the peace or disorderly conduct and is prohibited by statute is the wilful interrupting or disturbing of * * * any assembly of people * * * for any lawful purpose. The statute leaves open for judicial decision several questions * * * what constitutes an unlawful interruption or disturbance of such a meeting or assembly may be said to depend somewhat upon the nature and character of each particular kind of meeting, the purposes for which it is held, * * * conduct which, being contrary to the usages of the particuliar sort of meeting and class of persons assembled, interferes with its due progress or annoys the assembly in whole or in part, is a disturbance.”
*870 We hold that the petitioner has failed to demonstrate that the court below departed from the essential requirements of law in rendering its judgment and accordingly deny the petition for writ of certiorari.
CARROLL, DONALD K., Acting C. J„ and WIGGINTON, J„ concur.