James CAMPBELL, Jo Elaine Campbell and Joseph Castiglia, Plaintiffs,

v.

McLEAN TRUCKING COMPANY and Chauffeurs, Teamsters and Helpers, Local 445, Defendants.

No. 83 CV 1347 (ERN).

United States District Court, E.D. New York.

Sept. 5, 1984.

Bernstein & Arfa by Jonathan P. Arfa, Stephen G. Eisenberg, New York City, for plaintiffs.

Apruzzese & McDermott, Mastro & Murphy by Frederick T. Danser, III, Springfield, N.J., for defendant McLean Trucking Co.

David Kramer, New York City, for defendant Local 445.

MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiffs James Campbell and Joseph Castiglia filed suit on April 8, 1983 under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against McLean Trucking Company ("McLean") and Chauffeurs, Teamsters and Helpers Local 445 ("Local 445").[1] In claim one against Mc-

---

**1.** Plaintiffs are residents of the State of New York. McLean is a North Carolina corporation authorized to do business in New York. Local 445 is a labor union within the meaning of the National Labor Relations Act.

Lean alone, plaintiffs seek redress for alleged conduct which sounds in blacklisting. In claims two through five, plaintiffs request relief against McLean and Local 445 for, respectively, wrongful discharge and breach of the duty of fair representation.

■ Pursuant to Fed.R.Civ.P. 12(b), defendants have moved to dismiss all claims. McLean maintains that claim one is barred by the doctrine of preemption. Both defendants assert that claims two through five are precluded by the applicable statute of limitations. The Court agrees with defendants' contentions and, accordingly, grants their motions to dismiss for the reasons which follow.[2]

## FACTS

Plaintiffs, who had been terminated once previously but ordered reinstated, were employed at McLean's Newburgh, New York, break bulk facility until discharged on June 28, 1980. That final firing was assertedly for leading an unauthorized work stoppage, stemming from a dispute concerning a regularly scheduled coffee break. Not having been employed in the trucking industry since then, plaintiffs charge McLean with using its influence to thwart their hiring elsewhere.

In any event, plaintiffs contested the discharges by filing a grievance with the Joint Local Grievance Committee. They were represented by Local 445 at those proceedings. The panel deadlocked and the case was submitted to the New York State Board of Mediation. Issued in October 1980, that body's decision upheld the firings.

Presumably quite unsatisfied with that result, plaintiffs sought relief from the National Labor Relations Board (NLRB). An Administrative Law Judge (ALJ) rendered a December 31, 1981 decision for plaintiffs. McLean took exceptions and those objections are still pending before the NLRB.

On April 8, 1983, plaintiffs filed this action.

## DISCUSSION

### A. Claims Two through Five and Del-Costello

As each plaintiff has done in claims two through five, an individual employee may bring an action under § 301 charging an employer with violating the collective bargaining agreement and a union with violating its duty of fair representation. Such an action is referred to as a *Vaca-Hines* or hybrid suit. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

Until recently, the time period governing these hybrid actions was unsettled because congress has not enacted a statute of limitations for them. *Melin v. Arcata Graphics*, 556 F.Supp. 177, 179 (W.D.N.Y.1983). That uncertainty, however, no longer exists. In June 1983, the Supreme Court determined in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, ——, 103 S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983), that the statute of limitations for a § 301 suit is six months. That time length was borrowed from the National Labor Relations Act (Act) § 10(b), 29 U.S.C. § 160(b).

Plaintiffs filed this action two months *before DelCostello* was rendered. They acknowledge in their Brief at p. 4 that "had the instant case been filed today, or any time after *DelCostello* ..., such a six-month statute of limitations would be applicable ...." Therefore, relevant to claims two through five, the obvious question is whether the *DelCostello* decision should be given retroactive effect.

All but one Circuit considering this question have found *DelCostello* retroactive. *Perez v. Dana Corp.*, 718 F.2d 581 (3d Cir.1983); *Murray v. Branch Motor Express Co.*, 723 F.2d 1146 (4th Cir.1983); *Edwards v. Sea Land Service, Inc.*, 720 F.2d 857 (5th Cir.1983); *Curtis v. International Brotherhood of Teamsters, Local*

---

**2.** James Campbell's wife, Jo Elaine, is also a party to this suit. She, however, was not a McLean employee and any possible injury she might have incurred derives from that purport-edly suffered by her husband. Since his action is being dismissed, her derivative claim must be dismissed, as well. *See Bloss v. United States*, 545 F.Supp. 102, 105 (N.D.N.Y.1982).

*299*, 716 F.2d 360 (6th Cir.1983); *Storck v. International Brotherhood of Teamsters, Local Union 600*, 712 F.2d 1194 (7th Cir. 1983); *Lincoln v. District 9 of the International Ass'n of Machinists and Aerospace Workers*, 723 F.2d 627 (8th Cir.1983); *Hand v. International Chemical Workers Union*, 712 F.2d 1350 (11th Cir.1983). *Contra Edwards v. Teamsters Local No. 36*, 719 F.2d 1036 (9th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984); *Barina v. Gulf Trading and Transportation Co.*, 726 F.2d 560 (9th Cir.1984).

The Second Circuit applied *DelCostello* retroactively in *Assad v. Mount Sinai Hospital*, 703 F.2d 36 (2d Cir.1983), *vacated*, — U.S. —, 104 S.Ct. 54, 78 L.Ed.2d 73 (1983), *on remand*, 725 F.2d 837 (2d Cir. 1984). Yet, the Second Circuit did so without expressly addressing the possibility of relief from such a utilization under *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), which provides a three-prong test to determine the breadth of a judicial decision. Seizing upon that absence in *Assad*, plaintiffs argue that a *Chevron* analysis is appropriate here. Perhaps, but regardless of initial merit, that argument has since been mooted by the recent decision of *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239 (2d Cir.1984).

*Welyczko* was a suit against the employer and the union. That plaintiff's cause of action, which accrued in 1975 but not commenced until five years later, was dismissed by the Second Circuit based on a retroactive reading of *DelCostello*.

Though not conducting a *Chevron* analysis, the *Welyczko* Court settled the issue, nonetheless, by finding that *Chevron* was not suitable to the dispute before it. The Court of Appeals stated that *Chevron* would be fitting in two situations: (1) if the decision to be analyzed was a Second Circuit case, or (2) if the Supreme Court gave no indication as to the effect of its ruling. *Id.* at 241.

The first, of course, was not present since *DelCostello* is not a Second Circuit

decision. The second possibility was foreclosed by *DelCostello* itself, the Supreme Court having applied its decision retroactively to the very parties before it. In view of that tribunal's clear intention, the Court of Appeals held that it "must defer to the Supreme Court's directive on this issue." *Id.*

The Court of Appeals went on to state the rule for the Second Circuit:

"[I]n employment termination cases, a six-month statute of limitations applies both retroactively and prospectively to wrongful discharge/failure to represent claims."

*Id.*

■ In light of *that* plain statement, this Court, too, "must defer" and, therefore, dismiss plaintiffs' claims two through five as time barred.[3]

## B. Claim One and Preemption

Plaintiffs' first cause of action is against McLean alone, whereby they allege tortious interference with their right to secure other employment resulting in economic and emotional harm. In essence, though, that claim is for blacklisting.

Construing it as such, McLean urges dismissal arguing that this claim is preempted under the Act. The pertinent question, then, is whether the Act *does* deprive the Court of jurisdiction to adjudicate claim one.

Any discussion of preemption must begin with *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), which stated the general rule that:

"When an activity is arguably subject to ... the Act [*i.e.*, protected or prohibited by it], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted."

■ The purposes of preemption are to avoid conflicting regulation by various bod-

---

**3.** Although the final discharge has been assigned various dates in the papers, the actual date is of no consequence since all dates used indisputably fall outside the statute of limitations.

ies over substantive law and to protect the exclusive and primary jurisdiction of the NLRB. *See Motor Coach Employees v. Lockridge,* 403 U.S. 274, 285–88, 91 S.Ct. 1909, 1917–18, 29 L.Ed.2d 473 (1971); *Local 926, International Union of Operating Engineers v. Jones,* 460 U.S. 669, 681, 103 S.Ct. 1453, 1461, 75 L.Ed.2d 368 (1983). These goals—avoiding conflict and protecting jurisdiction—can be satisfied without a mechanical application of *Garmon* preemption. In brief, that rule is not absolute. *See Sears, Roebuck & Co. v. San Diego District Council of Carpenters,* 436 U.S. 180, 186, 98 S.Ct. 1745, 1751, 56 L.Ed.2d 209 (1978).

To expand, exceptions to preemption do exist. Specifically, the Supreme Court has not employed preemption where (1) the issues only peripherally concern the Act, (2) the issues touch interests deeply rooted in local feeling or (3) judicial supervision will not disserve the federal interests involved. *See Garmon,* 359 U.S. at 243–45, 79 S.Ct. at 778–79; *Lockridge,* 403 U.S. at 297, 91 S.Ct. at 1923.

■ But before reaching possible exceptions, the first step in a preemption case is to determine if the conduct is covered by the Act. If the conduct is either protected or prohibited by the Act, the suit is presumptively preempted. *Local 926,* 460 U.S. at 675, 103 S.Ct. at 1458–59.

Here, plaintiffs were discharged for purportedly leading an unauthorized work stoppage during a dispute over a regularly scheduled coffee break. Their inability to obtain work in the trucking industry followed. Plaintiffs contend that their continued unemployment was traceable to McLean's conduct. Specifically, plaintiffs maintain that, through its influence in the freight business, McLean has thwarted their re-employment, thereby interfering with their right to contract under State tort law.

That charge, however, is most certainly synonomous with an assertion of blacklisting. *See, e.g., NLRB v. Mount Desert Island Hospital,* 695 F.2d 634, 642 (1st Cir.1982) (Grange, a hospital worker who had been a frequent complainer about job conditions and managerial policies, was viewed by management as a "troublemaker". After voluntarily resigning, he subsequently attempted to be hired either at the same hospital or elsewhere. The hospital's management took affirmative steps to prevent Grange's rehire at that facility as well as another health care facility. Given such conduct, substantial evidence supported the NLRB's finding that the hospital's management "attempted to blacklist Grange because of his protected activities in violation of § 8(a)(1) of the Act.")

Further, as indicated by *Mount Desert Island Hospital* and contrary to plaintiffs' State tort characterization, blacklisting has long been recognized as an unfair labor practice and, thus, prohibited by the Act. *See NLRB v. Waumbec Mills,* 114 F.2d 226, 232–33 (1st Cir.1940); *Cone Bros. Contracting Co.,* 135 N.L.R.B. 108 (1962). In short, *at the least,* plaintiffs' claim one is " 'arguably subject to ... the Act' ... [citation omitted] ... and therefore come[s] within the primary jurisdiction of the ... Board ...." *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1253 (2d Cir.1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971).

Notwithstanding, conduct that may be preempted does not necessarily have to be. The exceptions to preemption operate after the conduct is found to be preemptable. *See Farmer v. United Brotherhood of Carpenters and Joiners, Local 25,* 430 U.S. 290, 296, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) ("We have refused to apply the preemption doctrine to activity that *otherwise* would fall within the scope of *Garmon* ....") (emphasis added).

The second step, thus, is to examine the exceptions and the factors that may override preemption and may revest the Court with jurisdiction. *See Local 926,* 460 U.S. at 675, 103 S.Ct. at 1458–59. The major concerns to be approached are (1) whether there is a significant State interest involved and (2) whether the Court and the Board will focus on identical issues in the adjudication.

While listing concerns to examine and claims not to be preempted, the major cases in this area provide no discernible point at which there is preemption on one side and no preemption on the other. In brief, there are no neat lines. The closest the Supreme Court has come to stating a minimum requirement for revesting jurisdiction in the courts was in *Farmer.* There, commenting on *Linn v. United Plant Guard Workers of America,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), the Supreme Court remarked that the finding of a significant State interest and no risk of identical issue adjudication "[t]aken together ... justified an exception to the preemption rule." *Farmer,* 430 U.S. at 299, 97 S.Ct. at 1062 (emphasis added). Likewise, the *Farmer* Court did not have to decide if one or the other would suffice by itself since it, too, found both a significant State interest and little risk of identical issue adjudication.

However, the lack of a mechanically applied standard appears to be by design. The determination of *whether* a court has jurisdiction requires a "sensitive balancing" between the harm to the federal scheme of regulation and the importance of the plaintiff's cause of action to the State. *See Local 926,* 460 U.S. at 676, 103 S.Ct. at 1459; *Sears,* 436 U.S. at 188, 98 S.Ct. at 1752; *Farmer,* 430 U.S. at 297, 97 S.Ct. at 1061. Through this "sensitive balancing", judicial jurisdiction has been held proper in actions for defamation (*Linn*), trespass (*Sears*) and, perhaps most important to this case, intentional infliction of emotional distress (*Farmer*).

Not surprisingly, plaintiffs do rely primarily on *Farmer* to sustain jurisdiction. There, petitioner alleged that the union had engaged in outrageous conduct consisting of threats and intimidation which caused emotional distress. *Id.* 430 U.S. at 292, 97 S.Ct. at 1059. The Supreme Court found

no preemption, saying that, "there is no federal protection for conduct on the part of union officers which is so outrageous that 'no reasonable man in a civilized society should be expected to endure it.'" *Id.* at 302, 97 S.Ct. at 1064 (citation omitted).

Here, plaintiffs, in their Brief at p. 12, complain of conduct alleged to be a "deliberate attempt ... to deprive [them] of employment in the trucking industry." Plaintiffs further say that "to interfere with this basic liberty is as outrageous an activity as one can imagine." So, having characterized the defendant's conduct as "outrageous", plaintiffs attempt to avoid preemption by fitting into the *Farmer* exception.

A mere labeling of the conduct complained of, however, does not satisfy the requirements necessary to avoid preemption. The Supreme Court in *Lockridge,* 403 U.S. at 292, 91 S.Ct. at 1920, said that it is the conduct and not the legal description that is important. This substance-form problem was recognized, for example, in *Breitegger v. C.B.S.,* 43 Cal.App.3d 283, 117 Cal.Rptr. 699, 706 (1974), where an unfair labor practice within the Board's jurisdiction was not cognizable in State court merely by labeling it an intentional tort.

Rather, the nature and severity of the conduct determines where the jurisdiction lies.[4] The Supreme Court in *Farmer* stated that:

"[U]nion discrimination in employment opportunities cannot itself form the underlying 'outrageous' conduct on which the state-court tort action is based; to hold otherwise would undermine the preemption principle. Nor can threats of such discrimination suffice to sustain state-court jurisdiction. It may well be that the threat, or actuality, of employment discrimination will cause a union member considerable emotional distress

---

**4.** Determining the degree of conduct may, indeed, lead to anomolous results. *Garmon,* 359 U.S. at 246, 79 S.Ct. at 780, indicated that the Board's unwillingness to assert jurisdiction does not automatically vest jurisdiction in the State court. It is, therefore, conceivable that there lies an area between jurisdictional reaches of

the Board and the courts. *See Taggart v. Weinacker's,* 397 U.S. 223, 228, 90 S.Ct. 876, 878, 25 L.Ed.2d 240 (1970) (Burger, C.J., concurring) ("a no law area"); *id.* at 230, 90 S.Ct. at 879 (Harlan, J., separate memorandum) ("hiatus"); *Sears,* 436 U.S. at 208, 98 S.Ct. at 1763 (Blackmun, J., concurring) ("no man's land").

and anxiety. But *something more* is required before concurrent state-court jurisdiction can be permitted. Simply stated, it is essential that the state tort be either *unrelated* to employment discrimination or a function of the *particularly abusive* manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself."

*Farmer*, 430 U.S. at 305, 97 S.Ct. at 1066 (emphasis added) (footnote omitted).

It is clear from the *Farmer* analysis that the factors operating to avoid preemption overlap. If conduct is "particularly abusive", then it will not only increase the State's interest in protecting its citizens but will often decrease the chances that the Board and a court will adjudicate the same issue. For example, in *Farmer*, 430 U.S. at 304, 97 S.Ct. at 1065, the Supreme Court stated that the issue presented to the Board would be different than the issue presented to the court.

"If the charges in [plaintiff's] complaint were filed with the Board, the focus of any unfair labor practice proceeding would be on ... [employment discrimination] .... Whether the ... conduct ... also caused [plaintiff] severe emotional distress ... would play no role in the Board's disposition ...."

Thus, in *Farmer*, the abusive manner giving rise to the emotional distress claim satisfied the "something more" required to revest jurisdiction in the judiciary. This Court, then, must decide whether that "something more" exists in this case.

Plaintiffs claim that McLean interfered with their right to contract and commenced a campaign of harassment, thereby causing them economic and emotional harm. Under plaintiffs' § 301 charges, the same general allegations are used under the subheading of blacklisting, maintaining that McLean "conspired" with other trucking companies to prevent their gaining employment.

Although it may be in plaintiffs' favor that the State does have an interest in protecting its citizens' right to compete in the marketplace, it is clear that adjudication by the Court would be identical to that by the Board. In both *Linn* and *Farmer*, the State courts could adjudicate issues that the Board would not be concerned with.[5] Although it may be clear that defamation and emotional distress can be separated from the labor elements involved in those cases, it is not so evident here. In this case, the act of preventing someone from securing employment is what constitutes both blacklisting and tortious interference. The Court comprehends no way to separate these issues in a trial.

In addition, there is no need to speculate on whether the Board would invoke jurisdiction and, if so, what its concerns would be. Unlike many cases in this area, the plaintiffs commenced this action *after* already obtaining the jurisdiction of and a decision from the Board. Indeed, the ALJ ordered McLean to stop "threatening its employees that it would see to it that they never work the freight business ...." Decision of NLRB ALJ at p. 23 (*see* McLean's Motion to Dismiss, Exhibit B). And, further, the ALJ granted an award of back wages and reinstatement. *Id.*

Nevertheless, despite the NLRB's exercise of jurisdiction and its decision on their behalf, plaintiffs remain unsatisfied arguing that the relief granted by the ALJ is insufficient. However, the limited relief available from the Board does not render the claim cognizable here. The Court's power to award, for example, punitive damages does not create jurisdiction. In fact, such a course was specifically rejected in *Garmon*, 383 U.S. at 246–47, 79 S.Ct. at 780. *See also Local 926*, 460 U.S. at 684, 103 S.Ct. at 1463.

■ The Court, in short, finds none of plaintiffs' contentions to be persuasive arguments for revesting this forum with jurisdiction. Accordingly, plaintiffs' claim one is barred by the doctrine of preemption.

---

5. The *Farmer* Court cautioned, however, "that concurrent state court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory scheme." *Farmer,* 430 U.S. at 305, 97 S.Ct. at 1066.

CONCLUSION

In conclusion, plaintiffs' claims two through five (the § 301 charges) are untimely under· *DelCostello* and *Welyczko;* moreover, their claim one (the blacklisting charge) is preempted. Therefore, the Court grants defendants' motions and judgment will be entered dismissing this suit.

SO ORDERED.