# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

RODNEY KEITH JONES,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2024-0400
_____

July 18, 2025

Appeal from the County Court for Manatee County; Erika Quartermaine, Judge.

Blair Allen, Public Defender, and Kevin Briggs, Assistant Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Marena S. Ramirez, Assistant Attorney General, Tampa, for Appellee.

SILBERMAN, Judge.

Rodney Keith Jones appeals his convictions and sentences for disturbing a lawful assembly, resisting an officer without violence, and threatening a law enforcement officer. Mr. Jones was convicted of the offenses after a jury trial and was sentenced to time served for the first two charges and to eleven months and twenty-nine days in jail for the third charge. We reverse his convictions for disturbing a lawful assembly

and resisting an officer without violence. However, we affirm his conviction for threatening a law enforcement officer.

## I. EVIDENCE PRESENTED AT TRIAL

The events surrounding this case occurred during a Bradenton City Council meeting and culminated in Mr. Jones's arrest. The meeting was uneventful during the time provided for public comments and questions. Similar to other citizens, Mr. Jones was allowed to speak for an allotted time. City councilmembers then addressed some questions raised by citizens, but no one addressed Mr. Jones's concerns. The City Council then moved to the consent agenda portion of the meeting, during which citizens are not allowed to comment.

A member of the audience replied to a statement made by a councilmember, and the mayor announced that they could not have any comments from the audience. Mr. Jones raised his hand and stated, "[C]an I ask you a question, please." The mayor stated, "Please, you're out of order Mr. Jones." Mr. Jones replied, "No, you're out of order because I asked for help and I'm not getting it." The mayor then instructed Mr. Jones that if he would like to go to the back of the room and talk to the police chief, Melanie Bevan, she would be willing to talk to him. At that point, Mr. Jones stood up and turned toward the back of the room while Captain Phillip Waller and another officer approached him. Mr. Jones sat back down, Captain Waller sat down behind him, and the two men talked for about three minutes. The City Council began to conduct business on the agenda, and the conversation between Captain Waller and Mr. Jones continued quietly and cannot be heard on a video recording of the meeting.

Captain Waller testified that he talked to Mr. Jones "for a few minutes, maybe three or four minutes, trying to de-escalate and try[ing]

2

to resolve whatever the issue was.  He refused.  And we made the decision at that time to placing [sic] under arrest."

> I could tell based on our conversation together he was very angry.  And as the conversation went on he got angrier.  It wasn't like before where it was fine.  I could tell that if he stayed there [sic] were still going to be more problems, more trouble.  And our goal for those meetings is just to ensure the security and that the meetings are conducted without any kind of interruptions.
>
> > . . . .
>
> During our conversation again he refused to leave and he refused to comply with the rules.  He stated he would not be quiet.  And we tried to get him to come out with us because we didn't want to make a scene in the meeting, even though we decided at the end of that conversation that you're going to jail.

When Mr. Jones did not stand to leave the meeting room, Captain Waller stated that he and other officers tried to pick up Mr. Jones to get him to walk out of the room, but when he did not, they put him on the floor and then carried him out.  Captain Waller testified on cross-examination that during their conversation, although Mr. Jones was angry, he was not disrespectful or loud.  Captain Waller further testified that he believed he had probable cause to arrest Mr. Jones for disturbing a lawful assembly based on Mr. Jones's statements to the mayor even though the discussion was for less than ten seconds, and other people had spoken for longer periods of time and were not arrested.  He testified: "Once we were having that conversation about him saying either he wasn't going to leave or follow the rules I didn't want to just sit back and wait for it to happen again.  So again that's when I did decide to place him under arrest."

The video of the meeting shows that while the City Council was conducting the consent agenda, Captain Waller and the other officer

3

stood up, and Mr. Jones remained seated. Chief Bevan then approached them from the back of the room and stood behind Mr. Jones. Chief Bevan and Captain Waller can be seen on the video talking to Mr. Jones, and the mayor then announced that the City Council was going to take a recess. The video stops briefly, and when it resumes, police are seen trying to remove Mr. Jones from the room as Mr. Jones sits on his knees and refuses to stand. There is no audio during the first two minutes of the arrest.

Bill Sanders, a former member of the Bradenton City Council, testified that he was sitting about two rows behind Mr. Jones at the meeting. He testified that no one else has ever been arrested at a council meeting. Further, police have targeted Mr. Jones because he speaks out against them. Regarding the conversation between Captain Waller and Mr. Jones, Mr. Sanders testified: "And they were speaking to you. They were whispering. But I could hear some of what they were saying. And they basically wanted you to voluntarily leave. And you said, you know, I'd like to sit here and get my questions answered." Mr. Sanders testified that a break was taken during the council meeting because the officers were being loud. He testified that Mr. Jones was not raising his voice and was not creating a disturbance.

In the days following the council meeting, police monitored and recorded videos posted by Mr. Jones on his Facebook page. During trial, the State played one such video in which Mr. Jones graphically described how he was going to physically harm Captain Bevan and stated, "I mean that shit." Mr. Jones unsuccessfully moved for a judgment of acquittal, arguing that his comments on Facebook were not actual threats because he was talking metaphorically.

## II. DISTURBING A LAWFUL ASSEMBLY

4

Mr. Jones argues that the trial court erred in denying his motion for judgment of acquittal as to the charge of disturbing a lawful assembly. He contends that any disturbance at the Bradenton City Council meeting was not substantial, that he did not intend to cause a disruption, and that it was the officers who caused the disruption.

This court reviews a trial court's denial of a motion for judgment of acquittal using a de novo standard of review and will affirm a conviction if it is supported by competent substantial evidence. *Andrews v. State*, 390 So. 3d 221, 237 (Fla. 2d DCA 2024) (quoting *Berry v. State*, 306 So. 3d 1256, 1258 (Fla. 2d DCA 2020)). "When moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." *Id.* (quoting *Fountain v. State*, 318 So. 3d 626, 628 (Fla. 2d DCA 2021)).

In reviewing Mr. Jones's conviction, we must also examine his First Amendment right to speak in this government forum. *See Lozman v. Riviera Beach*, 585 U.S. 87, 101 (2018) (reiterating that the right to petition the government is "one of the most precious of the liberties safeguarded by the Bill of Rights" (quoting *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 524 (2002))). Further, courts view a citizen's speech, including criticism of public officials, as "high in the hierarchy of First Amendment values." *Id.*; *see also Connick v. Myers*, 461 U.S. 138, 145 (1983). The First Amendment to the United States Constitution prohibits any law from infringing on "the freedom of speech, or . . . the right of the people . . . to petition the Government for a redress of grievances." Amend. I, U.S. Const. The Florida Constitution similarly provides, "No law shall be passed to restrain or abridge the liberty of speech . . . . "

5

Art. I, § 4, Fla. Const.  Nonetheless, speech may be restricted in certain settings.

> [T]he Constitution does not require the government to "grant access to all who wish to exercise their right to free speech," no matter the setting, "without regard to the nature of the property or to the disruption that might be caused by the speaker's activities."  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985).  Disallowing any limits whatsoever in all government spaces would often lead to chaos, and could even keep the government from fulfilling its lawful functions.  But that is not a license to evade the First Amendment, which demands a close look when the government restricts speech.

*McDonough v. Garcia,* 116 F.4th 1319, 1322 (11th Cir. 2024) (examining the City of Homestead's restrictions on a citizen's First Amendment rights including his removal from a city council meeting, a trespass order, and a ban from City Hall and future council meetings).

The government's ability to limit speech varies depending on the public forum.  "The Supreme Court has recognized four types: the traditional public forum, the designated public forum, the limited public forum, and the nonpublic forum."  *Id.* at 1322.  City council meetings are generally considered "limited public forums."  *Id.* at 1328.  In limited public forums, "the governmet's restrictions on speech 'must not discriminate against speech on the basis of viewpoint' and 'must be reasonable in light of the purpose served by the forum.' "  *Id.* at 1329 (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001)).

Here, the Bradenton City Council did not restrict Mr. Jones's speech based on its content.  The City Council let him speak for his allotted time during the public comment portion of the meeting.  Further, the City Council's decision to prohibit public comment during the consent agenda portion of the meeting was "reasonable in light of the

6

purpose served by the forum," which was to conduct city business.  *See id.*  Therefore, we conclude that the City Council's actions in preventing Mr. Jones from speaking during the consent agenda portion of the meeting did not offend his First Amendment rights.

We next examine whether Mr. Jones's actions violated section 871.01(1)(a), Florida Statutes (2023), which makes it unlawful for a person to willfully and maliciously interrupt or disturb any assembly of people who have met for any lawful purpose.

> To commit an offense under Section 871.01 a person must have deliberately acted to create a disturbance.  That is, he must act with the intention that his behavior impede the successful functioning of the assembly in which he has intervened, or with reckless disregard of the effect of his behavior.  The acts complained of must be such that a reasonable person would expect them to be disruptive.  Finally, the acts must, in fact, significantly disturb the assembly.  These elements are inherent in the statute as drafted.

*S.H.B. v. State*, 355 So. 2d 1176, 1178 (Fla. 1977).  In *S.H.B.*, the supreme court also "recognized that all civil freedoms have limits, though these limits should be drawn as broadly as possible and only placed with the greatest justification."  *Id.*  The court added that the elements of this offense "prevent an innocent party genuinely exercising his civil rights from being penalized."  *Id.*

Three years later in *Weidner v. State*, 380 So. 2d 1286, 1287 (Fla. 1980), the supreme court held that Weidner's motion for judgment of acquittal should have been granted where the evidence showed that he attended a town council meeting, one councilman called him a sick man, and Weidner "stepped forward with a tape recorder, asking the councilman to repeat his comment [and when doing so] pushed some chairs forward."  The councilman struck Weidner, causing general

7

disruption of the meeting. *Id.* In charging Weidner, the State "sought to punish him for conduct that allegedly disturbed a public assembly." *Id.* In light of the requirements announced in *S.H.B.*, the court concluded that the evidence did not support a guilty verdict. *Id.*; *cf. Carlson v. City of Tallahassee*, 240 So. 2d 866, 868 (Fla. 1st DCA 1970) ("Petitioner's contention that he can speak while another citizen already has the floor can only serve to diminish the right of both to the unfettered exercise of constitutional freedoms.").

We conclude that Mr. Jones's actions did not significantly disturb the assembly. He raised his hand and made two statements: "can I ask you a question, please," and "No, you're out of order because I asked for help and I'm not getting it." The comments were brief, and the City Council thereafter began the consent agenda. These statements were less disruptive than the actions in *Weidner*, where the appellant stepped forward with a tape recorder, asked the councilman to repeat his statement, and pushed some chairs forward. *Weidner*, 380 So. 2d at 1287.

Additionally, when the officers approached Mr. Jones, they spoke quietly. Mr. Jones's conversation with Captain Waller could not be heard on the video, Mr. Sanders testified that they were whispering, and the consent agenda portion of the meeting continued uninterrupted throughout Captain Waller's conversation with Mr. Jones. Captain Waller candidly acknowledged that after this conversation, he decided to arrest Mr. Jones based on his concern as to what Mr. Jones might later do or say to disrupt the meeting. Further, the evidence reflects that the meeting was ultimately interrupted when Chief Bevan and Captain Waller spoke to Mr. Jones, following which Captain Waller decided to arrest Mr. Jones and the officers carried Mr. Jones from the meeting. On

these facts, absent evidence that Mr. Jones deliberately acted to significantly disturb the meeting, the officers' arrest of Mr. Jones for disturbing a lawful assembly lacked probable cause. *See K.W. v. State*, 328 So. 3d 1022, 1025 (Fla. 2d DCA 2021) (noting that law enforcement is required to have probable cause that a crime either has been or is being committed before arresting an individual).

In summary, the speculation that Mr. Jones might speak out-of-order or become argumentative if he were not removed from the meeting did not provide probable cause for his arrest. And because Mr. Jones's conviction for disturbing a lawful assembly is not supported by competent substantial evidence, the conviction must be reversed.

## III. RESISTING AN OFFICER WITHOUT VIOLENCE

Since Mr. Jones's arrest for disturbing a lawful assembly was improper, his judgment for resisting an officer without violence must also be reversed. Section 843.02, Florida Statutes (2023), makes it a misdemeanor to "resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer." When an officer detains an individual without lawful authority, the officer is not acting in the lawful execution of his duties and "the individual's nonviolent effort to oppose or avoid the detention is not unlawful." *Dydek v. State*, 349 So. 3d 521, 528 (Fla. 2d DCA 2022). Thus, "the legality of the arrest is an element of the offense of resisting arrest without violence." *State v. Espinosa*, 686 So. 2d 1345, 1347 (Fla. 1996). Here, because the officers did not have probable cause to arrest Mr. Jones for disturbing a lawful assembly, we also reverse his conviction for resisting an officer without violence.

## IV. THREATENING A LAW ENFORCEMENT OFFICER

9

Mr. Jones argues that the trial court erred in denying his motion for judgment of acquittal as to the charge of threatening a police officer, Chief Bevan. Jones argues that his comments on his Facebook videos were not actual threats because the comments were hyperbole, and he was talking metaphorically. Viewing the evidence in the light most favorable to the State, we conclude that the trial court did not err in denying Mr. Jones's motion for judgment of acquittal. *See Andrews*, 390 So. 3d at 237.

Section 836.12(2)(a), Florida Statutes (2023), provides that it is unlawful to willfully and knowingly threaten a law enforcement officer with death or serious bodily harm. Courts must examine the totality of the circumstances "in distinguishing true threats from crude hyperbole." *Smith v. State*, 532 So. 2d 50, 53 (Fla. 2d DCA 1988). Mr. Jones's Facebook video comments, when viewed in a light most favorable to the State, were willful and knowing threats to a law enforcement officer. Therefore, we affirm his conviction for threatening a police officer.

Affirmed in part; reversed in part.

BLACK and MOE, JJ., Concur.

_____

Opinion subject to revision prior to official publication.